# GRIN *v.* SHINE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF CALIFORNIA.

No. 303. Submitted November 3, 1902.—Decided December 1, 1902.

Extradition treaties should be faithfully observed and interpreted with a
view to fulfilling our just obligations to other powers, without sacrific-
ing the legal or constitutional rights of the accused. Technical non-
compliance with formalities of criminal procedure should not be allowed
to stand in the way of the discharge of the international obligations of
this Government.

1. Section 5270 of the Revised Statutes is satisfied if the commissioner before
whom the warrant requires the person arrested to appear has been spe-
cifically authorized to act in extradition proceedings on the same day the
warrant is issued, and the oath to the complaint need not necessarily be
taken before a commissioner specially authorized to act in extradition
proceedings; but the judge issuing the warrant may act upon a complaint
sworn to before a United States commissioner authorized generally to
take affidavits.

2. The District Judge may make the warrant returnable directly before a
commissioner who upon the same day is specially designated to act in ex-
tradition proceedings. It need not necessarily be made before himself.

3. Under a statute punishing embezzlement of property which has come
under the control or care of the defendant by *virtue of his employment* as
clerk, agent, or servant, it is sufficient to allege that the defendant while
so employed embezzled money entrusted to, and received by, him in his
capacity as clerk, etc.

A complaint in extradition need not set forth the crime with the particu-
larity of an indictment. It is sufficient if it fairly apprises the party of
the crime with which he is charged.

4. A complaint is not defective because it does not use the word "fraudu-
lently" in referring to the defendant's action in embezzling the money
entrusted to him. The word "embezzle" implies a fraudulent intent;
the addition of the word "fraudulently" would be mere surplusage.

5. An order made by an officer in Russia, purporting to act as an examining
magistrate, and reciting the fact of defendant's flight and ordering him
to be brought before an examining magistrate, which is evidently de-
signed to secure the apprehension of the accused and his production before
an examining magistrate, although not in the form of a warrant of arrest
as used in this country, is a sufficient compliance with the provision of
the treaty which requires an authenticated copy of the warrant of arrest

or of some other equivalent judicial document issued by a judge or magistrate of the demanding government. Furthermore, Congress not having required by section 5270 the production of a warrant of arrest by the foreign magistrate, has waived that requirement of the treaty.

6. The sufficiency of evidence properly certified under section 5 of the act of August 3, 1882, 22 Stat. 216, to establish the criminality of the accused for the purposes of extradition, cannot be reviewed upon *habeas corpus* (following *In re Oteiza*, 136 U. S. 330).

7. Where depositions and other documents in the record are certified by the proper officer, as required by the act of August 3, except that the certificate says that the papers " are properly and legally authenticated so as to entitle them to be received and admitted *as evidence* for similar purposes by the tribunals of Russia," the language being a literal conformation to the statute, adding only the words italicized, the introduction of those words does not invalidate the certificate.

8. Under section 5270 the complaint may be made by any person acting under authority of the demanding government having knowledge of the facts. The accused, however, can only be surrended upon the requisition made by the foreign government through the diplomatic agent or superior consular officer, and this may be made entirely independently of the proceeding before the magistrate, and the certificate of the Secretary of State that such demand has been made does not have to be produced before the warrant can be issued.

9. Where a cheque is delivered to a clerk with instructions to draw money from the bank, take it to the railway, and forward it to another city, he obtains possession of both the cheque and the money honestly and with the consent of his principal, and if he subsequently converts the money to his use, it is *prima facie* a case of embezzlement and not of larceny, within the definitions of both crimes under the laws of California, and while there might be a question for a jury in a Russian court to pass on, it is sufficient in proceedings here if a *prima facie* case of embezzlement is made out.

THIS was an appeal from a judgment of the Circuit Court for the Northern District of California, dismissing a writ of *habeas corpus* sued out by Grin, and remanding him to the custody of the defendant, marshal for the Northern District of California, who held him under a mittimus issued by a commissioner in certain proceedings under a treaty with the Emperor of Russia for the extradition of criminals, proclaimed June 5, 1893. 28 Stat. 1071.

These proceedings were begun by a complaint of Paul Kosakevitch, Russian consul at the city of San Francisco, stating in substance that on March 6, 1901, Grin, a Cossack of the Don

and a Russian subject, in the employment of the firm of E. L. Zeefo & Co., doing business in the city of Rostov, on the river Don, in the Empire of Russia, embezzled the sum of 25,000 roubles, " entrusted to and received by " him in his capacity as " clerk " of such firm, and that he had subsequently absconded and taken refuge in San Francisco ; that he had been indicted in Russia for the embezzlement of the money, and that a mandate had been issued by the Department of State in Washington directing the necessary proceedings to be had in pursuance of the laws of the United States, in order that the evidence of this criminality might be heard and considered. The complaint was sworn to before George E. Morse, United States commissioner, with the usual power to take affidavits, but not specially authorized by any court of the United States to take proceedings in extradition ; that upon such complaint the judge of the District Court for the Northern District of California issued a warrant of arrest, and directed that petitioner, when arrested, should be brought before E. H. Heacock, Esquire, United States commissioner, for examination and further proceedings ; that, at the time such warrant was issued, Heacock was not authorized to take jurisdiction of extradition proceedings, and that the evidence before him failed to show that the petitioner had committed the crime of embezzlement.

Several other defects in the extradition proceedings are set forth in the petition, and so far as they are deemed material appear hereafter in the opinion.

Upon a hearing upon this petition the Circuit Court made an order remanding the petitioner to the custody of the marshal, and an appeal was thereupon taken to this court. *In re Grin,* 112 Fed. Rep. 790.

*Mr. George D. Collins* for appellant.

*Mr. Richard Bayne* and *Mr. H. G. Platt* for the Russian government.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

We shall only notice such alleged defects in the extradition proceedings as are pressed upon our attention in the briefs of counsel. While these defects are of a technical character, they are certainly entitled to respectful and deliberate consideration. Good faith toward foreign powers, with which we have entered into treaties of extradition, does not require us to surrender persons charged with crime in violation of those well-settled principles of criminal procedure which from time immemorial have characterized Anglo-Saxon jurisprudence. Persons charged with crime in foreign countries, who have taken refuge here, are entitled to the same defences as others accused of crime within our own jurisdiction.

We are not prepared, however, to yield our assent to the suggestion that treaties of extradition are invasions of the right of political habitation within our territory, or that every intendment in proceedings to carry out these treaties shall be in favor of the party accused. Such treaties are rather exceptions to the general right of political asylum, and an extension of our immigration laws prohibiting the introduction of persons convicted of crimes, 18 Stat. 477, by providing for their deportation and return to their own country, even before conviction, when their surrender is demanded in the interests of public justice. There is such a general acknowledgment of the necessity of such treaties that of late, and since the facilities for the escape of criminals have so greatly increased, most civilized powers have entered into conventions for the mutual surrender of persons charged with the most serious non-political crimes. These treaties should be faithfully observed, and interpreted with a view to fulfill our just obligations to other powers, without sacrificing the legal or constitutional rights of the accused.

In the construction and carrying out of such treaties the ordinary technicalities of criminal proceedings are applicable only to a limited extent. Foreign powers are not expected to be versed in the niceties of our criminal laws, and proceedings for a surrender are not such as put in issue the life or liberty of the accused. They simply demand of him that he shall do what all good citizens are required, and ought to be willing to

do, viz., submit themselves to the laws of their country. Care should doubtless be taken that the treaty be not made a pretext for collecting private debts, wreaking individual malice, or forcing the surrender of political offenders; but where the proceeding is manifestly taken in good faith, a technical non-compliance with some formality of criminal procedure should not be allowed to stand in the way of a faithful discharge of our obligations. Presumably at least, no injustice is contemplated, and a proceeding which may have. the effect of relieving the country from the presence of one who is likely to threaten the peace and good order of the community, is rather to be welcomed than discouraged.

1. The first assignment of error is that the commissioner had no jurisdiction over the case, inasmuch as at the time the warrant of arrest was issued he had not been authorized to act in extradition proceedings by any of the courts of the United States under Rev. Stat. sec. 5270, which reads as follows:

" SEC. 5270. Whenever there is a treaty or convention for extradition between the government of the United States and any foreign government, any justice of the Supreme Court, circuit judge, district judge, commissioner, authorized so to do by any of the courts of the United States, or judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within the limits of any State, District, or Territory, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or commissioner, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or conven-

tion; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."

Under this section it is plain, first, that the commissioner must be specially authorized to act in extradition cases; second, that a complaint must be made under oath charging the crime; third, that a warrant must issue for the apprehension of the person; fourth, that he must be brought before such justice, judge or commissioner to the end that the evidence of criminality may be heard and considered; fifth, that the commissioner shall certify the evidence to the Secretary of State, that a warrant may issue for the surrender. There is certainly no requirement here that the commissioner shall be authorized to act before he assumes to act, and in this case there is no evidence that he assumed to act until after October 17, 1901, when he was specially appointed for that purpose. The day upon which the petitioner was brought before the commissioner, Heacock, does not appear, but his commitment is dated November 19, 1901. The warrant upon which he was arrested was issued October 17, the day upon which the commissioner was specially authorized to act.

It is true that a warrant of arrest can only issue under sec. 5270 upon a complaint made under oath; but there is no requirement that the oath shall be taken before a commissioner authorized to act in extradition proceedings, or even before the judge or commissioner, who issues the warrant of arrest. While we are bound to give the person accused the benefit of every statutory provision, we are not bound to import words into the statute which are not found there, or to say that the judge issuing the warrant may not receive an oath taken before a commissioner authorized generally to take affidavits. There is no evidence that Mr. Morse, who took this complaint, was not a United States commissioner appointed under the act of May 28, 1896, 29 Stat. 140, 184, and the fact that he signs his name as such, and that he was recognized as such by the Circuit Court in this proceeding, is sufficient evidence of his authority. It is true the district judge, who issued this warrant of arrest, might himself have administered the oath, but he was equally at liberty

to act upon a complaint sworn to before a United States commissioner.

2. Nor did the district judge, who issued the warrant, exceed his powers in making it returnable before a commissioner, who upon the same day was specially designated to act in extradition proceedings. It is true that the statute provides, sec. 5270, that the person before whom the complaint is made may "issue his warrant for the apprehension of the person so charged, that he may be brought before *such* justice, judge, or commissioner, to the end that the evidence of criminality may be heard and considered ;" but the practice in this as in other proceedings of a criminal or *quasi* criminal nature has been to make the warrant returnable before the magistrate issuing the warrant, or some other magistrate competent to take jurisdiction of the proceedings. In the case of *Henrich*, 5 Blatchf. 414, the complaint was made before Commissioner White, was laid before Mr. Justice Nelson of this court, who issued his warrant returnable before himself *or* Commissioner White. No objection was made to the proceedings for this reason, though the case was vigorously contested upon other grounds, notably because the warrant was executed without the limits of the district, and within the State of Wisconsin. The fact that the point was not made in the case certainly indicates that it was not considered by counsel to be even a plausible ground for quashing the proceedings.

The commissioner is in fact an adjunct of the court, possessing independent, though subordinate, judicial powers of his own. If the district judge, acting under sec. 5270, had made the warrant returnable before himself, there could be no doubt of its legality ; and in such case, upon the return of the warrant with the prisoner in custody, he might refer the case to the commissioner to examine the witnesses, hear the case, and report his conclusions to the court for its approval. If he could do that, we see no objection to his referring the case directly to the commissioner by making the warrant returnable before him, inasmuch as the latter possesses the same power with respect to the extradition of criminals as the district judge himself. It may be said that technically the warrant should be made re-

turnable before the magistrate issuing it, but where it is made returnable before another officer, having the same power and jurisdiction to act, we do not think it is fairly open to criticism.

This practice is by no means unknown under the criminal laws of the several States. Thus in *Commonwealth* v. *O'Connell*, 8 Gray, 464, it was held that a mere grant of "exclusive jurisdiction" to a police court over certain offences, did not exclude the authority of justices of the peace to receive complaints and issue warrants returnable before that court. To the same effect are *Commonwealth* v. *Pindar*, 11 Metc. 539; *Commonwealth* v. *Roark*, 8 Cush. 210; *Commonwealth* v. *Wolcott*, 110 Massachusetts, 67; *Hendee* v. *Taylor*, 29 Connecticut, 448.

No objection seems to have been taken to the proceedings before the commissioner upon the ground that he did not issue the warrant, and as he was fully vested with authority to act in extradition cases we do not think the fact that the judge, for the convenient dispatch of business, made his warrant returnable before such commissioner can be made available upon a writ of *habeas corpus*.

3. The eighth assignment of error turns upon the sufficiency of the charge of embezzlement. The first article of the extradition treaty with Russia of June 5, 1893, 28 Stat. 1071, after providing for the mutual surrender of fugitive criminals from one country to another, declares that "this shall only be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and commitment for trial if the crime or offence had been there committed." We do not deem it necessary to inquire whether the words "evidence of criminality" include a definition of the crime charged or to determine by what law the elements of the crime of embezzlement are fixed. Moore on Extradition, sec. 344. As the petitioner has sought to apply the definition of embezzlement given in the law of California as likely to be most favorable to himself, and the prosecution has assented to this view, we assume for the purposes of this case that this is the definition contemplated by the treaty.

Section 508 of the Penal Code of California is as follows:

" Every clerk, agent, or servant of any person who fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of another which has come into his control or care by virtue of his employment as such clerk, agent, or servant, is guilty of embezzlement."

Objection is made to the complaint upon the ground that there is no allegation that the money embezzled came into his control or care " by virtue of his employment" as such clerk, the allegation being that Grin was employed as clerk; that while so employed the money was entrusted to and received by him " in his capacity as clerk," as aforesaid. Whatever might be the force of an objection to an indictment that it does not set out in the exact language of the statute the fact that the money came into his possession by virtue of his employment, we think that the complaint in this particular is clearly sufficient. It is a general principle of criminal law that the complaint need not set forth the crime with the particularity of an indictment, and that it is sufficient, if it fairly apprises the party of the crime of which he is charged. If there be any distinction at all between an allegation that money came into the possession of a person by virtue of his employment as clerk, and in his capacity as clerk, it is too shadowy to be made a matter of exception to the complaint.

4. Equally unfounded is it that the complaint is defective because it does not use the word " fraudulently," the allegation being " that the accused wrongfully, unlawfully and feloniously appropriated said money." As the word " embezzled" itself implies fraudulent conduct on the part of the person receiving the money, the addition of the word " fraudulent" would not enlarge or restrict its signification. Indeed, it is impossible for a person to embezzle the money of another without committing a fraud upon him. The definition of the word " embezzlement" is given by Bouvier as " the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another." In *City* v. *Randall*, 54 California, 408, a complaint that defendant did " wilfully, unlawfully, and feloniously embezzle and convert" certain securities to his

own use, was held to be a sufficient compliance with sec. 1426 of the Penal Code, requiring the offence charged to be set forth "with such particulars of time, place, person, and property as to enable the defendant to understand distinctly the character of the offence complained of, and to answer the complaint." The complaint in this case differs from that only in the substitution of the word "wrongfully" for the word "wilfully," and we think it is clearly sufficient. As the word "embezzle" implies a fraudulent intent, the addition of the word "fraudulently" is mere surplusage. *Reeves* v. *State,* 95 Alabama, 31; *United States* v. *Lancaster,* 2 McLean, 431; *State* v. *Wolff,* 34 La. Ann. 1153; *State* v. *Trolson,* 21 Nevada, 419; *State* v. *Comb's,* 47 Kansas, 136. We express no opinion as to whether it would be necessary in an indictment.

5. It is further insisted that the treaty requires an authenticated copy of the warrant of arrest or of some other equivalent judicial document, issued by a judge or magistrate of the foreign government duly authorized so to do, and that there is no such process in the record as a warrant of arrest or its equivalent. It is true that art. VI of the treaty provides that "when the person whose surrender is asked shall be merely charged with the commission of an extraditable crime or offence, the application for extradition shall be accompanied by an authenticated copy of the warrant of arrest or of some other equivalent judicial document issued by a judge or a magistrate duly authorized to do so." But it can hardly be expected of us that we should become conversant with the criminal laws of Russia, or with the forms of warrants of arrest used for the apprehension of criminals. The clause is satisfied by the production of an equivalent document. On examination of the record we find a certified copy of an order by one purporting to act as an examining magistrate, and reciting that "having investigated the preliminary examination concerning the accusation of the Cossack, Simeon Grin," and that "as he is hiding under a false name, and, as is seen from his letters, is looking out for means to prevent his arrest and the finding out of his address by the authorities, his temporal place of residence being known at present," pursuant to art. 389 of the Criminal

Code of Procedure, " he is ordered to be brought to the city of Rostov on the Don, in order to be placed at the disposition of the examining magistrate of the Taganrog Circuit Court." This order purports not only to be signed, but sealed by the examining magistrate Okladnykh, and while it is not in the form of a warrant of arrest as used in this country, it is evidently designed to secure the apprehension of the accused, and his production before an examining magistrate. This seems to us a sufficient compliance with the treaty. If not a warrant of arrest it is an equivalent judicial document, issued by a judge or magistrate authorized to do so.

But there is another consideration in this connection which should not be overlooked. While the treaty contemplates the production of a copy of a warrant of arrest or other equivalent document, issued by a magistrate of the Russian Empire, it is within the power of Congress to dispense with this requirement, and we think it has done so by Rev. Stat. sec. 5270, hereinbefore cited. The treaty is undoubtedly obligatory upon both powers, and, if Congress should prescribe additional formalities than those required by the treaty, it might become the subject of complaint by the Russian government and of further negotiations. But notwithstanding such treaty, Congress has a perfect right to provide for the extradition of criminals in its own way, with or without a treaty to that effect, and to declare that foreign criminals shall be surrendered upon such proofs of criminality as it may judge sufficient. *Castro* v. *De Uriarte*, 16 Fed. Rep. 93. This appears to have been the object of sec. 5270, which is applicable to all foreign governments with which we have treaties of extradition. The requirements of that section, as already observed, are simply a complaint under oath, a warrant of arrest, evidence of criminality sufficient to sustain the charge under the provisions of the proper treaty or convention, a certificate by the magistrate of such evidence and his conclusions thereon, to the Secretary of State. As no mention is here made of a warrant of arrest, or other equivalent document, issued by a foreign magistrate, we do not see the necessity of its production. This is one of the requirements of

the treaty which Congress has intentionally waived. Moore on Extradition, sec. 70.

6. Again, it is alleged that although the complaint sets forth that criminal proceedings have been instituted in Russia, and that Grin had been therein "indicted" for embezzlement, no indictment has ever been found, and that no other evidence of criminality can be received. It is obvious that the word "indictment," as it appears in this complaint, was used in the general sense of charged or accused by legal proceedings, and not in the technical sense of an indictment, as here understood. An indictment is a technical word peculiar to Anglo-Saxon jurisprudence, and implies the finding of a grand jury. To give it the construction contended for would require us to know what an indictment was under the laws of Russia and to inspect it, at least so far as to ascertain the charge for which the conviction of the accused is sought. No indictment was necessary to be produced under this complaint, the proceeding being governed by section 5 of the act of August 3, 1882, 22 Stat. 216:

"That in all cases where any depositions, warrants, or other papers or copies thereof shall be offered in evidence upon the hearing of any extradition case under Title sixty-six of the Revised Statutes of the United States, (secs. 5270 and 5271,) such depositions, warrants, and other papers, or the copies thereof, shall be received and admitted as evidence on such hearing for all the purposes of such hearing, if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that any deposition, warrant or other paper or copies thereof, so offered, are authenticated in the manner required by this act."

The sufficiency of such evidence to establish the criminality of the accused for the purposes of extradition cannot be reviewed upon *habeas corpus*. *In re Luis Oteiza*, 136 U. S. 330.

7. It is further insisted that the depositions and other docu-

ments which appear in the record have not been properly and legally authenticated. The certificate of the ambassador in that connection is that these papers "are properly and legally authenticated so as to entitle them to be received and admitted as evidence for similar purposes by the tribunals of Russia." As this is a literal conformation to the above statute, adding only the words, " as evidence," it is difficult to see in what respect it is deficient. If we were to hold that a certificate in the language of the statute were insufficient, the certifying officer would be at once embarked upon a sea of speculation as to the proper form of such certificate, and would be utterly without a guide in endeavoring to ascertain what the requirements of the law were in that particular. All that was decided in the case of *Luis Oteiza,* 136 U. S. 330, in this connection was that depositions and other papers authenticated and certified as required by the act, were not admissible on the part of the accused. The introduction of the words "as evidence" does not vitiate the certificate. We find it difficult to conceive any other purpose for which such depositions could be used except as evidence of criminality.

8. No evidence was required that the Russian consul had authority to make the complaint. All that is required by sec. 5270 is that a complaint shall be made under oath. It may be made by any person acting under the authority of the foreign government having knowledge of the facts, or, in the absence of such person, by the official representative of the foreign government based upon depositions in his possession, although under the first article of the treaty the accused can only be *surrendered* upon a "requisition" of the foreign government, and by art. VI such requisition must be made by the "diplomatic agent of the demanding government," and in case of his absence from the seat of government, by the "superior consular officer." It is true that art. VII of the treaty provides that it " shall be lawful for any competent judicial authority of the United States, upon production of a certificate issued by the Secretary of State, stating that request has been made by the Imperial Government of Russia for the provisional arrest of a person convicted or accused of the commission therein

of a crime or offence extraditable under this convention, and upon complaint, duly made, that such crime or offence has been so committed, to issue his warrant for the apprehension of such person ; " and in this case it appears by the certificate of the Acting Secretary of State that application was made in due form by the chargé d'affaires of Russia accredited to this government, for the arrest of Grin, alleged to be a fugitive from the justice of Russia. This, however, was entirely independent of the proceedings before the magistrate, which might have been instituted by any person making a complaint under oath and acting by the permission or authority of the Russian government. While art. VII undoubtedly contemplates a prior certificate of the Secretary of State, the language of the article is merely permissive, and does not compel the production of such certificate before the warrant can be issued.

It might readily happen that the foreign representative might have no knowledge of the facts necessary to be embodied in a complaint, and have no documentary evidence then at hand to prove them. In such case if a complaint could not be made by a private person, having knowledge of the facts, the surrender might easily be defeated by the flight of the accused.

It was formerly held that a requisition from the demanding government was necessary to be produced before the commissioner could act, In re Herris, 32 Fed. Rep. 583, but the opinion in this case was reversed by Mr. Justice Brewer on appeal to the Circuit Court, who held that no preliminary requisition was necessary, as extradition could not be consummated without action by the executive in the last instance, and that the authority of the foreign government to act need not appear in the complaint, if it were made to appear in the examination before the commissioner, or elsewhere in the proceedings. Bearing in mind the frequent necessity for immediate action in case the whereabouts of the accused is ascertained, the delay necessary to procure a preliminary requisition might often result in the defeat of justice.

In Kaine's case, 14 How. 103, 129, this court was nearly equally divided upon the question whether a preliminary mandate from the executive was necessary. So long as Mr. Jus-

tice Nelson, who thought such mandate necessary, remained upon the bench his opinion was followed in the Second Circuit, *In re Henrich,* 5 Blatch. 414; *In re Farez,* 7 Blatch. 34, 45; but since that time a different view has been taken of the question. *In re Macdonnell,* 11 Blatch. 79; *In re Thomas,* 12 Blatch. 370. Judge Lowell's opinion accorded with the later, and, as we think, the sounder view, *In re Kelley,* 2 Lowell, 339. See also *Benson* v. *McMahon,* 127 U. S. 457.

9. It is again objected that the facts set forth in the record show that defendant, if guilty at all, is guilty of larceny and not of embezzlement, and that as the laws of California make a clear distinction between embezzlement and larceny, he cannot be held for one crime upon proof of his guilt of the other. The charge set forth in the complaint is that Zeefo, one of the members of the firm of E. L. Zeefo & Co., entrusted and delivered a cheque for the money to Grin, who subsequently received the money from the bank to take it to the Vladikavkaz Railway Company, by which it was to be taken to Novorosseesk, and upon the same day absconded. Upon these facts it is insisted that the defendant had nothing more than the bare custody, as distinguished from the possession of the money, and therefore could not and did not embezzle it, but stole it.

By section 503 of the Penal Code of California "embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted," and by section 508, "every clerk, agent, or servant of any person who fraudulently appropriates to his own use . . . any property of another which has come into his control or care by virtue of his employment as such clerk, agent, or servant, is guilty of embezzlement." As Grin was clerk of the firm, and as the money was delivered to him in his capacity as clerk for a special purpose, it certainly came into his control or care. We do not care to inquire into the soundness of the distinction made in some of the older cases between the custody and possession of property, because under the section above quoted nothing more is necessary to constitute embezzlement than that the party charged should have the control or care of the money.

The cases in California upon this subject are decisive. Thus,

in *Ex parte Hedley*, 31 California, 108, where the agent of an express company, authorized to draw telegraphic cheques on his principal for money to be used in the principal's business, but not to draw individual cheques, drew certain cheques as agent for money to be used in his private business, and the principal paid the money to the drawee, it was held to amount to a receipt of the money of the principal by the agent "in the course of his employment." It was further held that, in order to convict one of embezzling money of his principal, it was necessary to establish four propositions: First, that the accused was an agent; second, that he received money belonging to his principal; third, that he received it in the course of his employment; fourth, that he converted it to his own use with intent to steal the same. In *People* v. *Tomlinson*, 102 California, 19, a recent case upon the same subject, the law of California was summed up as follows: "Where one honestly receives the possession of goods upon a trust, and after receiving them fraudulently converts them to his own use, it is a case of embezzlement. . . . But, where the possession has been obtained through a trick or device, with the intent, at the time the party receives it, to convert the same to his own use, and the owner of the property parts merely with the possession and not with the title, the offence is larceny."

These cases are strictly in line with that of *Moore* v. *United States*, 160 U. S. 268, in which we held that "embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking."

The cases relied upon by the petitioner are of the latter description. Thus in *People* v. *Abbott*, 53 California, 284, defendant was instructed by a bank to purchase silver for its account; and, to provide him with funds, the bank certified and delivered him a cheque drawn by him on the bank. He did not purchase the silver, but used the cheque for his own purposes. It was held that, if he took the custody of the certified cheque with

the intention of stealing it, he was guilty of larceny. The question was treated as one for the jury. In *People* v. *Raschke*, 73 California, 378, it was held that if one, through false representations, obtains the possession of personal property with the consent of the owner, but without a change of the general title, he is guilty of larceny, upon subsequently converting the same to his own use, if he had the felonious intent to steal the property at the time the possession was obtained. The authority of these cases is not questioned. In the case under consideration, a cheque was delivered to the petitioner with instructions to draw the money from the bank, take it to the railway station, to be forwarded to another city. The facts show that he obtained possession of both the cheque and the money, honestly, and with the consent of his principal, and subsequently converted it to his own use. *Prima facie*, at least, this makes a case of embezzlement, and if there were in fact an original intent to steal, that is a question for a jury in a Russian court to pass upon. It is sufficient for the purposes of this proceeding that a *prima facie* case of embezzlement is made out.

This disposes of all the questions made in the brief, and the judgment of the Circuit Court is

*Affirmed.*