## EX PARTE ALVAREZ.

## APPLICATION for Writ of *Habeas Corpus.*

No. 25.—Decided June 25, 1908.

HABEAS CORPUS—EXTRADITION TREATY BETWEEN SPAIN AND THE UNITED STATES—PROCEEDINGS BROUGHT BY A VICE CONSUL.—In accordance with the provisions of article 11 of the extradition treaty between Spain and the United States of June 15, 1904, superior consular officers may request the extradition of a fugitive in Porto Rico, and a consul may commence extradition proceedings, and it is unnecessary for a court to inquire whether or not he has received orders from his Government to do so. *Query:* It is doubtful whether or not a vice consul may ask for the extradition of a fugitive.

ID.—EXTRADITION—SUFFICIENCY OF COMPLAINT—SPECIFICATION OF CRIME—PRELIMINARY ARREST.—Extradition proceedings should be commenced by a complaint and the preliminary arrest of the accused, and the complaint must be sufficiently explicit to inform the accused of the nature of the crime with which he is charged, the time and place of its commission, and charge him with a crime named in the treaty, as without this requisite the officer before whom the complaint is made has no jurisdiction to order the arrest.

ID.—EXTRADITION—SUFFICIENCY OF COMPLAINT—MUST STATE KNOWLEDGE OF FACTS.—The complaint by virtue of which the arrest of a person is sought in order that he may be extradited, must state the facts constituting the crime and the consular officer who swears to the complaint must state that he has a knowledge of the facts either personally or by information and belief.

ID.—EXTRADITION—JUDGES WHO MAY TAKE COGNIZANCE OF EXTRADITION PROCEEDINGS.—Section 5270 of the Revised Statutes of the United States specifies what judges may take cognizance of extradition proceedings. *Quere:* It is unnecessary to decide whether a *fiscal* has the power under said section to take cognizance of such proceedings.

The facts are stated in the opinion.

*Mr. Bosch* for petitioner.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

The prisoner, Juan Alvarez Peña, was detained in the jail of San Juan on a warrant issued by the *fiscal* of this district in consequence of a complaint by the Spanish vice consul seeking the ultimate extradition of the prisoner.

The grounds alleged for his release in the present proceeding in *habeas corpus* are substantially as follows: First, that

such imprisonment is illegal because there is no extradition treaty in force between the United States and Spain; second, because even in the case of a treaty existing, the request for extradition cannot be complied with because it emanates from a judge of instruction of Spain and it is directed to the consul in Porto Rico, when it should be directed to the Spanish Minister of Justice; third, because the request or complaint is signed by the vice consul instead of by the consul. Since the hearing of the case the Acting Governor of Porto Rico has received a cable from the Acting Secretary of State saying that ''extradition treaty between Spain and United States signed June 15, 1904, proclaimed May 21, 1908, article 12, provides that Spanish subjects may be held for two months when in absence of legal evidence they shall be released.'' At the hearing there was also presented a copy of the Spanish publication containing a copy of the treaty in Spanish. While no English text of it has been presented, the Spanish one before me bears all the indications of being a true version in Spanish and along with the cable advice is sufficient for me to take judicial notice of the most important treaty provisions necessary to a disposition of this case.

Section 11 of the text provides that the superior consular officer may ask for the extradition of a fugitive in a possession like Porto Rico, or in the absence from the country of the diplomatic officers. A consul is therefore a proper officer to prefer a complaint, and I do not think a court or officer need look to see the source of his authority. That a consul was a proper person to initiate proceedings was decided by the Supreme Court in the case of *Ornelas* v. *Ruiz,* 161 U. S., page 507, without apparently any reference being made to the stipulations of the treaty there in question. At what times he should act in an extradition proceeding is a matter between his Government and himself. We only need to have a showing that he is such consul.

The question whether the vice consul has authority to make a complaint is much more doubtful. He may possibly be comprehended within the term *"funcionarios consulares superiores,"* but as extradition treaties are to be liberally construed and a proof of the ratification of the acts of the vice consul by the consul was offered during the hearing without objection, the doubt should be decided in favor of the official making the complaint. (See likewise *Grin* v. *Shine,* 187 U. S., 193.)

At the hearing of this cause on the 23d of this month, upon the terms of the treaty being read by the *fiscal* of this court representing the Spanish Government, counsel for the petitioner objected to the sufficiency of the complaint filed by the vice consul, because the offense described was not included within the terms of the treaty. The question was argued by both counsels, the *fiscal* insisting that this was merely a preliminary proceeding and that any defects in the description of the crime could be supplied at the time of the bringing of the evidence, which, by article 12 of the treaty, might be done within two months after the issuance of the warrant. It was apparently his theory and the theory of the complaint that the filing of the complaint was a proceeding preliminary to the extradition application, and that such application might be made hereafter. I am unfortunately unable to examine the exact words of the English text of the treaty; but I find nothing in the Spanish text which makes this treaty of June 15, 1904, differ essentially from the previous treaties between the United States and other countries. Prior to the commencement of extradition proceedings a preliminary complaint under oath is necessary, and the provisions of the Revised Statutes of the United States, section 5270, are substantially to the same effect.

The Spanish text of the treaty before us provides that *"dichos representantes diplomáticos ó funcionarios consulares serán competentes para pedir y obtener un mandamiento*

*ú orden preventiva de arresto contra la persona cuya entrega se solicita y en su virtud los jueces y magistrados de ambos gobiernos tendrán respectivamente poder y autoridad previa denuncia hecha bajo juramento para obtener una orden para la captura de la persona inculpada á fin de que pueda ser llevada ante el juez ó magistrado para que pueda conocer y tomar en consideración la prueba de su culpabilidad.*" In the case of *Grin* v. *Shine*, 187 U. S., pages 193-194, the Supreme Court so construed a treaty with Russia which likewise provided for "the provisional arrest of a person convicted or accused of the commission therein of a crime or offense extraditable under this convention and upon complaint duly made that such crime or offense had been so committed to issue his (the magistrate's) warrant for the apprehension of such person." What all the treaties and the statute provide is that in extradition proceedings there may be a preliminary arrest and detention before the formal demand to the executive authorities for the turning over of the prisoner. Even if the treaty contemplated first a preliminary complaint and subsequently a more formal information to be filed before a court of record, nevertheless certain legal requirements are necessary. The most informal complaint before any kind of magistrate must comply with certain fixed rules of our jurisprudence. (*Ex Parte Van Hoven*, Federal Cases, No. 16858, a case of extradition.) They must apprise the person against whom they are directed of the nature of the crime against him. This was so held in the case of *In re Fárez*, Federal Cases, No. 4644, 7 Blatchford, 34. Here Mr. Justice Blatchford says: "It is not enough in the complaint merely to charge a party with a crime named in the convention—that is, forgery. The complaint in this case contained nothing more than a naked general charge of forgery without any sufficient specifications of time or place or the nature of the forgery or of the forged instrument or document.

In the case of *Grin* v. *Shine,* cited above, where the charge was embezzlement,. the Supreme Court says, page 189, that it is a general principle of criminal law that the complaint need not set forth the crime with the particularity of an indictment and that it is sufficient if it fairly apprises the party of the crime of which he is charged. The complaint must, however informally, set up a treaty offense. (*Ornelas* v. *Ruiz,* 161 U. S., 502, 508; *Bryant* v. *United States,* 167 U. S., p. 104; *Terlinden* v. *Ames,* 184 U. S., p..278.) These and the other cases cited show also that the magistrate must have jurisdiction of the subject matter.

Unless it does appear that the crime charged is one included in the treaty, the committing magistrate has no authority to hold the alleged fugitive.

Let us examine the complaint on which the warrant for the arrest of the prisoner was issued. It is made by the Spanish vice consul, Mr. Ramón de Noboa y Miguel de Villena. He swears that he is such vice consul and that on the 29th of May, 1908, he received in the Spanish consulate a cable from Las Palmas, in the Canary Islands, a Spanish possession belonging to the Crown of Spain, and he sets out the words of the cable, which are as follows: "'Tomás Barrinaga, judge instructor to the Spanish consul, San Juan, Porto Rico, requests your excellency to ask the aid of the authorities to detain Juan Alvarez, steamship *Buenos Aires,* embarked at Tenerife or Palmas, complained against for *estafa.* He is dark, thin, black moustache, large black movable teeth (*dientes*) (*sic*), perhaps is traveling under an assumed name." Then the affiant goes on to say that by virtue of the things agreed upon in the treaty of extradition between Spain and the United States of America of June 15, 1904, he complains before the *fiscal* as a magistrate of Porto Rico of Juan Alvarez Peña and in his character of vice consul requests the *fiscal* to issue an order of arrest and to present the corresponding information to the district court in order to detain

Juan Alvarez Peña so that in due time he may be returned to Las Palmas, where he is wanted; that the proof in this case has been duly requested and is awaited momentarily to be presented when required before a court of record.

This complaint is very insufficient. The form of it is bad. It does not set forth the facts constituting the crime either in the personal knowledge of the deponent nor on information or belief. That a complaint must show knowledge or source of knowledge and the expression of a belief is shown in the case of *Rice* v. *Ames,* 180 U. S., 371, likewise a case of extradition. Here, however, none of the facts constituting the extraditable offense are sworn to by the vice consul. He contents himself with saying that he received a cable from Spain, the words of which he sets forth in full.

Even supposing the complaint was sufficient in form, it has many serious defects. It contains less of a description than the one contained in the complaint which was the subject of the opinion in the case of *In re Fárez* cited above. *Estafa* is supposed to be the crime with which he is charged. In the *Código Penal* of Cuba and Porto Rico, which we understand is, in this respect, the same as the code in force in the "Peninsula," articles 558 and 565 treat of *estafa* and other deceits. It is not very clear from the examination of these sections what the crime of *estafa* includes. Supposing, however, to be equivalent to *abuso de confianza,* described in subdivision 20 of article two of the treaty, as contended by the *fiscal,* the complaint is, nevertheless, defective in not setting forth any of the facts which constitute the alleged embezzlement, supposing *abuso de confianza* to be a translation of the English word embezzlement. (See *In re Fárez* cited above.) In the case *In re Roth,* 15 Fed. Rep., 506, it is shown that in extradition proceedings it makes no difference how the offense is characterized provided the facts show that it is a crime punishable in both countries. Here, however, we have no facts to judge of the nature of the crime.

Furthermore, the subdivision 20 of article two provides that a person·may be extradited where the embezzlement or *abuso de confianza* is more than $200. No sum is mentioned in the complaint.

Section 5270 of the Revised Statutes of the United States provides the magistrates or judges who may hear extradition proceedings. It may be that although the *fiscal* is a magistrate by virtue of section 13 of the Code of Criminal Procedure in force in Porto Rico he still may have no authority by virtue of section 5270 of the Revised Statutes. I consider it unnecessary to decide specifically this point.

No treaty offense having been shown and the complaint being otherwise defective, there was no authority or jurisdiction in the committing magistrate to hold the prisoner, and he should be immediately discharged.

*Petition granted.*