### SCHELL v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 24, 1919.)

No. 5395.

EMBEZZLEMENT ☞9—EVIDENCE SHOWING ACCUSED IN POSSESSION OR CUSTODY OF PROPERTY OF UNITED STATES.

A laborer employed in a mint, whose duty it was, with another, to remove coins from a scale where they had been weighed, into receptacles on trucks, and wheel the trucks into a vault, *held* intrusted with the possession and control of coins while being so moved, which rendered his appropriation of some of them to his own use while so handling them "embezzlement," within Penal Code, § 47 (Comp. St. § 10214).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Embezzlement.]

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Criminal prosecution by the United States against Enos Peter Schell. Judgment of conviction, and defendant brings error. Affirmed.

Thomas Ward, Jr., and G. W. Musser, both of Denver, Colo., for plaintiff in error.

Harry B. Tedrow, U. S. Atty., of Denver, Colo.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

ELLIOTT, District Judge. The defendant was indicted, convicted, and sentenced upon the charge of having embezzled certain coins of the United States alleged to have been in his possession and control while employed as a laborer in the United States mint at Denver, Colorado. The defendant, Schell, now seeks reversal upon "the sole ground that the undisputed evidence shows that defendant committed the offense of larceny, if he committed any offense, and not the offense of embezzlement, with which he was charged."

The defendant was a laborer in the melting and refining department of the mint at Denver. The coins alleged to have been embezzled were brought into a large transfer room, where the scales were situated, from what was called the coiner's department, by two employés of the department, and placed in the pan on the scales,

and thereupon control over these coins ceased so far as these two employés were concerned. The coins were then weighed by the general management of the mint, and the weights checked by a representative of the coiner's department and by a representative of the melting department. It appears that the immediate duty the defendant and his coworker had to perform with reference to the specific coins alleged to have been embezzled was to take them into their possession and custody while they were on the scales in the pan, scoop them out of the pan into receptacles upon trucks which Schell and his coworker, Bush, pushed into the vault which leads off the make-up room, where the trucks were left with their loads upon them and the vault locked.

There was testimony covering the weighing in both departments, the reweighing, and the discovery of the shortage, with the tracing of the coins, alleged to have been embezzled, into the possession of the defendant, the details of which it is unnecessary to set forth. Suffice it to say there is testimony on the part of Schell's coworker that he saw the defendant scooping the coins with his right hand, shoving the silver into the scoop with his left, then going with his left into his pocket as he dumped with his right hand, and the details of the finding of the silver upon the defendant. There is substantial testimony that Schell, as an employé of the United States engaged in the mint, had the actual physical possession of this silver, and that it came lawfully into his possession and custody.

The contention of the defendant is simply that upon these facts, with reference to the defendant's connection with the coins, the defendant never had possession, control, or even custody of the coins, nor was he intrusted with them, so that it was possible for him to embezzle any of them; that, if he took any of them, the original taking was wrongful, and constituted larceny. On the other hand, the plaintiff insists that, upon the state of facts shown, the actual physical possession of the coins was in the defendant from the moment he began to scoop from the pan on the scales until he followed his coworker out of the vault, which was after he had pulled and his coworker had pushed the last of the two trucks into the vault; that the defendant was lawfully entitled to put his hand into the pan and to scoop up the silver; that it was part of his regular duties, as an employé of the mint, to receive these coins and put them into the vault; that his handling of the silver and transfer of the same was lawful—within his duties—and that he then separated a small number of the coins from the large mass in his possession and converted them to his own use.

The respective contentions, therefore, resolve themselves into a discussion of the differences between larceny and embezzlement. No good purpose can be served by an extended consideration of such differences. The term "embezzlement" has been used in many different statutes, and, as it is a statutory offense, but little aid can be derived from the construction put upon local statutes by the courts of the various states. McKnight v. U. S., 97 Fed. 208, 215, 38 C. C. A. 115.

This conviction is under section 47 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1097 [Comp. St. § 10214]):

"Whoever shall embezzle * * * moneys * * * of the United States shall be fined. * * *"

It will be noted that the statute itself does not define the crime of embezzlement.

"Embezzlement is the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking." Moore v. U. S., 160 U. S. 268, 16 Sup. Ct. 294, 40 L. Ed. 422.

Having in mind the employment of this defendant in the mint and the character of his duties, with the facts and circumstances appearing in the record, the jury was justified in finding that the defendant came into the possession and custody of these coins lawfully, and that he took coins from the larger quantity thus coming under his control, and that, therefore, there was:

(1) A breach of trust or duty in respect to the coins in question, which belonged to the government of the United States;

(2) That he wrongfully appropriated the same to his own use.

Counsel for defendant finally contends that, upon the facts as they appear of record here, the defendant had nothing more than the bare custody, as distinguished from the possession, of the coins in question, and therefore could not and did not embezzle them, but stole them. The Supreme Court of the United States has disposed of this contention in Grin v. Shine, 187 U. S. 181, 23 Sup. Ct. 98, 47 L. Ed. 130, in which the court says:

"We do not care to inquire into the soundness of the distinction made in some of the older cases between the custody and possession of property, because under the section above quoted nothing more is necessary to constitute embezzlement than that the party charged should have the control or care of the money."

There is substantial testimony to sustain the verdict of the jury that the defendant was an employé of the United States to whom these coins, alleged to have been embezzled, were intrusted, that they lawfully came into his hands by virtue of his employment, and that they were thereafter converted to his own use, in violation of this statute of the United States.

The judgment of conviction is therefore affirmed.