19 F.Supp. 719 (1937)
THE WASHINGTON.
UNITED STATES ex rel. SCHREIBER
v.
REIMER.
District Court, S. D. New York.
May 11, 1937.
J. Irving Weissman, of Brooklyn, N. Y., for relator.
Lamar Hardy, U. S. Atty., of New York City (Robert L. Werner, of New York City, of counsel), for respondent.
LEIBELL, District Judge.
The relator, Izak Leib Schreiber, or Sofer, born in Poland in 1904, entered the United States, June 29, 1933, at the Port of New York as a nonquota immigrant. He had been married at Antwerp, Belgium, May 8, 1930, to Selma Roth, a naturalized American. They have one child, born April 23, 1934. Selma, the wife, obtained a Rabinnical divorce through a Rabbi in New York in November, 1933, and the husband, the relator, obtained a divorce in the Supreme Court of Cook county, Ill., June 3, 1935, in a proceeding in which Selma, the wife, was not served and did not appear. The relator has been compelled by an order of the Domestic Relations Court in New York City to contribute to the support of the child of the marriage. As a result of their marital differences, relator's wife filed information with the United States Bureau of Immigration in which, among other things, she accused the relator of having been convicted of embezzlement in Belgium in 1931 prior to his admission to the United States.
The relator was interviewed in Brooklyn February 11, 1936, by an Immigration Inspector and questioned on a number of matters, and in respect to the arrest and trial in Antwerp, Belgium, relator answered certain questions as follows:
"Q. Were you ever arrested in any other country? A. I accepted a job as a traveling salesman for a man, whose name I can't remember, in Antwerp. I then went to Brussels, where he was located, where he gave me 500 francs for traveling expenses. I did not produce enough business to satisfy him, and in the meantime I got married, so he thought he would drag me to court because he thought that I received a dowry. He took me to a court in Antwerp, but I don't remember the name of the court, and not having money for a lawyer, although I was innocent, I was ordered to pay the 500 francs or receive two weeks in jail. I served the two weeks rather than give him the 500 francs, which I didn't have anyway.
"Q. What was the name of the man who had you arrested? A. I don't know.
"Q. What was the charge on which you were tried? A. That I swindled him out of 500 francs, probably, but I don't know for sure. A year, or more, later I served the sentence of two weeks.
*720 "Q. On what charge were you sentenced? A. I was just sentenced to pay. There was no ground. It was probably contempt of court because I refused to pay.
"Q. Can you give any definite charge? A. No, sir."
As a result of this interview, the Immigration Inspector reported to the District Director at Ellis Island, New York Harbor, on February 17, 1936, and stated:
"Much effort was directed toward trying to develop the charge on which the subject was convicted and served a sentence of two weeks in Antwerp, Belgium, in an effort to determine whether he might have been convicted of a crime or misdemeanor involving moral turpitude prior to entry, but this could not be accomplished on account of the alien's vagueness. Attention is called to this feature of the case, so that an investigation may be conducted abroad, if it is felt that the circumstances warrant and if it is deemed advisable."
The District Director recommended to the Commissioner of Immigration at Washington that a Consular investigation be conducted abroad in an endeavor to ascertain whether or not this alien had a criminal record prior to his entry into this country. The Secretary of State was accordingly requested to have this investigation made and he in turn communicated with the American Consulate General at Antwerp. On April 7, 1936, John C. Wiley, American Consul General at Antwerp, Belgium, reported to the Secretary of State of Washington (Despatch No. 135) that he had taken the matter up with the local authorities and "All pertinent details of Schreiber's record in Belgium are contained in a letter which I have just received from `Le Procurer du Roi' and a copy thereof, together with a free translation, is enclosed."
The pertinent part of the letter of the Procureur du Roi of Antwerp, Belgium, dated April 2, 1936, is as follows:
"Par jugement du tribunal correctional d'Anvers en date due 17 avril 1931, Schreiber Izak Leib a été condamné contradictoirement á 50 fr. d'amende majorés de 70, décimes ou 15 jours de prison, du chef de détournement d'une somme de 500 fr. et d'une quantité d'articles de parfumerie au préjudice de Frischman, Henri."
The free translation inclosed in the American Consul's letter reads:
"By judgment of the Correctional Tribunal of Antwerp on April 17, 1931, Schreiber, Izak Leib, has been sentenced, after hearing of both parties, to a fine of 50 francs plus 70 decimes or 15 days in prison for embezzling the sum of 500 francs and a quantity of perfumery articles from Henry Frischman."
The Secretary of State forwarded to the Secretary of Labor true copies of the American Consul's letter and inclosures and they were in turn sent to the District Director of Immigration at Ellis Island. Thereafter, on the recommendation of the District Director, a warrant for the arrest of the relator was issued on May 26, 1936, for the reason that relator "has been convicted of or admits having committed a felony or other crime or misdemeanor involving moral turpitude prior to entry into the United States, to wit: Embezzlement." The warrant contained the usual provision that the alien be granted a hearing to enable him to show cause why he should not be deported.
The alien was granted a hearing on June 2, 1936, at Ellis Island. He was represented by counsel. In the course of his examination by the Immigration Inspector at that hearing, he gave the following answers to these questions:
"Q. I show you certified copy of Consular Despatch No. 135 from the American Consulate General in Antwerp, Belgium, dated April 7, 1936, together with copy of letter and English translation thereof, and I make same, in its entirety, part of the record in your case and ask you if you are the same person referred to therein and who was convicted as indicated thereby? A. Yes, I am.
"Q. According to this letter, you were fined 50 francs plus 70 decimes or 15 days in prison, for embezzling the sum of 500 francs and a quantity of perfumery articles from Henry Frischman, is that correct? A. No. I showed in court at that time the receipt that the man received the merchandise in full but the balance of it is the truth."
No objection was made by relator's attorney to the admission of the Consul's letter and its inclosures at the hearing.
On June 10, 1936, relator's deportation was recommended by the District Director, New York District. An appeal was taken to a Board of Review and that Board on July 27, 1936, recommended that *721 the alien be deported to Poland at government expense on the ground: "That he is in the United States in violation of the Act of February 5, 1917, in that he has been convicted of a felony or other crime or misdemeanor involving moral turpitude prior to entry into the United States, to wit: Embezzlement." A warrant of deportation was accordingly issued on these grounds on July 27, 1936. Because of delay in obtaining passport facilities for the alien's deportation to Poland, he was released on $500 bond. When the Polish citizenship of relator was finally established and passport obtained, he was taken into custody for deportation under the aforementioned warrant and April 7, 1937, was set as the date for his deportation.
The alien then petitioned for and obtained a writ of habeas corpus. On the return to the writ the Commissioner of Immigration submitted a duly certified file containing the record of the case from which the foregoing facts have been gathered.
The relator contends:
(1) That Despatch No. 135 dated April 7, 1936, from the American Consulate General at Antwerp and its attached letter dated April 2, 1936, from the Belgian Procureur du Roi were not competent evidence and that their receipt and consideration by the Immigration Authorities and Secretary of Labor rendered the hearing and all proceedings herein unfair.
The answer to this contention is that Administrative Boards, such as the Immigration Bureau, are not bound by the common-law rules of evidence. United States ex rel. Ng Kee Wong v. Corsi (C.C.A.) 65 F.(2d) 564; Kjar v. Doak (C.C.A.) 61 F. (2d) 566. In the latter case a consular certificate from the American Consul at Copenhagen, Denmark, which included a statement taken from the alien's father by the Burgermaster of Hammarum, Denmark, was held properly admitted in evidence at the alien's hearing before the Immigration authorities. Likewise, in United States ex rel. Andonovitch v. Carr (D.C.) 6 F.Supp. 1021, it was held that several letters relative to a foreign investigation as to the presence of the alien in Carev Dvor, Yugoslavia, during the period from 1920 to 1927 were properly introduced in evidence by the examining immigration inspector. One was a letter from the American Consul reporting receipt of a communication from the chief of the Prespan district, Yugoslavia; another was a letter of the district chief of Prespan district. See, also, Kunimori Ohara v. Berkshire (C.C.A.) 76 F.(2d) 204.
Relator also contends:
(2) That all the letter of the Belgian Procureur du Roi shows is "that on April 17, 1931 relator was fined 50 francs and 70 decimes (about two American dollars, $2.) for alleged conversion (not embezzlement) of 500 francs (about $15. American) willingly given him nearly two years earlier, by one Frischman, a merchant, for traveling expenses, and a quantity of perfumery short from his sample line at the conclusion of his unsuccessful sales efforts."
In United States ex rel. Zaffarano v. Corsi, 63 F.(2d) 757, the Circuit Court of Appeals for this Second Circuit stated, "We have heretofore held that, in determining whether the crime of which an alien stands convicted is one `involving moral turpitude,' neither the immigration officials nor the courts sitting in review of their action may go beyond the record of conviction. United States ex rel. Meyer v. Day (C.C.A.) 54 F.(2d) 336, 337; United States ex rel. Robinson v. Day (C.C.A.) 51 F.(2d) 1022, and cases there cited. They must look only to the inherent nature of the crime or to the facts charged in the indictment upon which the alien was convicted, to find the moral turpitude requisite for deportation for this cause," and "* * * neither the immigration officials nor the court reviewing their decision may go outside the record of conviction to determine whether in the particular instance the alien's conduct was immoral. And by the record of conviction we mean the charge (indictment), plea, verdict, and sentence. The evidence upon which the verdict was rendered may not be considered, nor may the guilt of the defendant be contradicted." 63 F.(2d) 757, at page 759.
Applying this test to the report of the Procureur du Roi in this case, it appears that the Correctional Tribunal of Antwerp was a court having criminal jurisdiction; and that the relator on April 17th was "sentenced, after hearing of both parties, to a fine of 50 francs plus 70 decimes, or 15 days in prison for embezzling the sum of 500 francs and a quantity of perfumery articles from Henry Frischman." I have used the translation sent by the American Consul at Antwerp. The word in the *722 French document of the Procureur du Roi that corresponds to "embezzling" is "détournement." "Détournement" is defined in the Dictionnaire Internationale Francais-Anglais, Ed. A. Fourant, and in Cassell's New French Dictionary, Ed. Funk & Wagnalls, as "embezzlement."
The American Consul's letter of April 7, 1936, indicates that he was requested by the United States Secretary of State to conduct an investigation "with a view to ascertaining whether Mr. Izak Leib Schreiber had a criminal record prior to his entry into the United States on June 29, 1933," and that he took the matter up with "the local authorities" and that "all pertinent details of Schreiber's record in Belgium are contained in a letter which I have just received from `Le Procureur du Roi', and a copy thereof, together with a free translation, is enclosed." So that the report of "Le Procureur du Roi" recites Schreiber's criminal record in Belgium prior to his entry into the United States. Further, the judgment of the Correctional Tribunal of Antwerp of April 17, 1931, shows that Schreiber had been "sentenced"the French document reads "a été condamné." The sentence was that he pay a fine or go to jail for fifteen days.
"Détournement" is defined in Anspach and Coutache's Dictionary of Anglo-Belgian Law as "Abus De Confiance" and that in turn is defined as an offense (délit) very near embezzlement. When things have been delivered to the offender by the owner himself, the crime is abus de confiance (not vol, i. e., theft). "Whoever, to anybody's prejudice, has fraudulently détourné (misused) or spent goods, cash, bills, documents, contracts, handed over to him for a special object, commits abus de confiance."
In Graham Olver's French-English Dictionary of Legal and Commercial Terms "détournement" is defined (1) misappropriation by a servant of funds the property of his master; (2) fraudulent abstraction of documents. These definitions show that fraud and an abuse of trust are essential elements of the crime of détournement.
In our law embezzlement has been defined as "Embezzlement is the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking." Moore v. United States, 160 U.S. 268, 269, 16 S. Ct. 294, 295, 40 L.Ed. 422.
And as "As the word `embezzled' itself implies fraudulent conduct on the part of the person receiving the money, the addition of the word `fraudulent' would not enlarge or restrict its signification. Indeed, it is impossible for a person to embezzle the money of another without committing a fraud upon him. The definition of the word `embezzlement' is given by Bouvier as `the fraudulent appropriation to one's own use of the money or goods intrusted to one's care by another.'" Grin v. Shine, 187 U.S. 181, 189, 23 S.Ct. 98, 102, 47 L.Ed. 130.
Embezzlement is a crime of moral turpitude. Weedin v. Hempel (C.C.A.) 28 F. (2d) 603.
"Criminal frauds with respect to property have universally * * * been deemed to involve moral turpitude." United States ex rel. Popoff v. Reimer (C.C.A.) 79 F.(2d) 513, 515.
Both the inherent nature of the crime of "détournement" and the facts of the charge on which relator was convicted and sentenced, according to the judgment of the Correctional Tribunal of Antwerp as set forth in the report of the Procureur du Roi, indicate clearly that the alien was convicted of a crime involving moral turpitude.
The relator was accorded a fair hearing before the Boards of the Bureau of Immigration. There is substantial evidence in the record to support the charge on which his deportation has been ordered. The record shows that the alien was convicted at Antwerp, Belgium, on April 17, 1931, prior to his entry into the United States on June 29, 1933, of a felony or other crime or misdemeanor involving moral turpitude. The writ of habeas corpus is therefore dismissed and the relator is remanded to the custody of the Commissioner of Immigration for deportation (8 U.S. C. § 155, 8 U.S.C.A. § 155).
Submit order on notice.