UNITED STATES of America,

v.

Vincent CHIARELLA, Defendant.

No. 78 Cr. 2.

United States District Court,
S. D. New York.

March 29, 1978.

Stanley S. Arkin, New York City, for movant Chiarella; Mark S. Arisohn, New York City, on the brief.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., by John S. Siffert, Asst. U. S. Atty., New York City, for the U. S.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Defendant Vincent Chiarella, indicted on seventeen counts of securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),[1]

---

1. Section 10 provides in relevant part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security regis-

and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5,[2] moves for an order, pursuant to Fed.R.Cr.P. 12(b)(2), dismissing the indictment upon the ground that it fails to state an offense and, alternatively, for an order dismissing the indictment in the interest of justice.

The allegations of the indictment—taken as true for purposes of this motion—are essentially that between September 1975 and December 1976, Chiarella, a printer employed in the composing room of Pandick Press, Inc.,[3] in the course of his employment, received materials from various corporations to set in type. From these he would learn of prospective tender offers—presumably at prices above the market—by corporations for the stock of others or that a corporate merger was in prospect. He would then purchase for his own account shares of the common stock of the target companies without disclosing the material, non-public information he had thus learned. After each tender offer or proposed merger was announced, Chiarella would sell the shares in the target companies, at an aggregate profit of some $30,000. In all, the indictment alleges the use of such information on five different occasions.[4]

Chiarella claims that since the source of the information he failed to disclose was from outside the target corporations whose stock he purchased, he did not trade on "inside" information within the meaning of the securities laws. Further, he claims he was not in a fiduciary relationship as to

anyone so that he had no duty of disclosure prior to purchasing shares in the target companies, and that, accordingly, his actions did not constitute even a civil violation of § 10(b)—and Rule 10b–5—much less a criminal violation.

The government, recognizing that this is a novel application of § 10(b), urges that under the law Chiarella could not trade in the shares of the target corporations at all. It contends that on the one hand, the federal securities laws required him to disclose the material, non-public information prior to trading, while on the other, the confidential nature of the information, by virtue of the purpose for which Pandick Press received it from the offering companies, precluded him from doing so.

Crediting the indictment, there is no question that Chiarella wrongfully took corporate information—unquestionably material and non-public—entrusted to him by offering corporations, and used it solely for personal profit, which information was "intended to be available only for a corporate purpose and not for the personal benefit of anyone . . . . " *Cady, Roberts & Co.,* 40 S.E.C. 907, 912 (1961). The analogy of embezzlement by a bank employee immediately springs to mind, and, of course, embezzlement implies fraudulent conduct. *E. g., Grin v. Shine,* 187 U.S. 181, 189–90, 23 S.Ct. 98, 47 L.Ed. 130 (1902). Chiarella can, therefore, hardly claim that the acts alleged did not operate as a fraud. *See United*

---

tered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

2. Rule 10b–5 provides:

Employment of manipulative and deceptive devices.

It shall be unlawful for any reason, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material

fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

3. Pandick Press is a financial printing house that prints, among other things, tender offer materials for filing with the SEC and for distribution to shareholders.

4. Chiarella's use of the mails in furtherance of his purchases satisfies the statutory requirement of § 10 for federal jurisdiction.

States v. Persky, 520 F.2d 283, 287–88 (2d Cir. 1975). Chiarella's purchases further acted as a fraud upon the acquiring corporations whose plans and information he took while he was setting them in type, because his purchases might possibly have raised the price of the target companies' stock, increasing the cost of legitimate market purchases by such acquiring corporations, and thus constituted "a manipulative or deceptive device or contrivance" within the prohibition of § 10(b) and Rule 10b–5. See A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967).

Looking in the other direction, Chiarella's failure to disclose his purloined information to the sellers whose stock he purchased constituted an "inherent unfairness," Cady, Roberts & Co., supra, 40 S.E.C. at 912, and a "deceptive device" in connection with his purchases.

As to those from whom he purchased, however, Chiarella urges that he is criminally liable on these facts only if the offering companies are similarly liable for pre-tender offer purchases of target companies' shares without disclosure of their intent. The clear answer to this, as I perceive it, is that such corporate purchases have a presumptively legitimate business purpose to promote economic growth and are appropriately made without disclosure [5] so as not to "raise a seller's demands and thus abort the sale." General Time Corp. v. Talley Industries, Inc., 403 F.2d 159, 164 (2d Cir. 1968), cert. denied, 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969). Chiarella's alleged misuse of information, in contrast, was solely for personal profit, serving no business purpose. It thus falls within the intent of Congress in the enactment of § 10(b) to punish "those manipulative and deceptive practices . . . [that] fulfill no useful function." S.Rep.No.792, 73d Cong., 2d Sess., 6 (1934).

The motion to dismiss is denied.

So Ordered.

5. Subject to the requirements of the Williams Act, §§ 13(d) & 14(d) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78m(d) & 78n(d).