## In re HERSKOVITZ.

### (District Court, N. D. Ohio, W. D. February 13, 1901.)

#### No. 1,164.

1. EXTRADITION—TREATY WITH GREAT BRITAIN—SUFFICIENCY OF COMPLAINT.

Under article 10 of the extradition treaty with Great Britain of 1842, a complaint for the arrest and examination of an alleged offender is not required to set out the offense with the particularity of an indictment, but is sufficient if it conforms to the requirements of a preliminary complaint under the local law where the accused is found.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Extradition, § 12.]

2. SAME—PROCEEDINGS BEFORE COMMISSIONER—COLLATERAL ATTACK.

Under Rev. St. § 5270 [U. S. Comp. St. 1901, p. 3591], which vests Justices of the Supreme Court, Circuit and District Judges and commissioners with concurrent jurisdiction to issue warrants and make examinations and commitments in extradition proceedings, the judgment of a commissioner in such a proceeding cannot be reviewed for error by a District Court on a writ of habeas corpus.

[Ed. Note.—Scope of review on habeas corpus to procure release of person sought to be extradited, see note to Bruce v. Rayner, 62 C. C. A. 506.]

3. SAME.

Evidence of malice on an ulterior purpose on the part of the prosecuting witness at whose instance a criminal prosecution was instituted in a foreign country will not invalidate a commitment of the accused for extradition from this country.

On Petition for Writ of Habeas Corpus.

Kohn & Northrup, Southard & Love, and John A. Dunn, for petitioner.

King & Tracy, for respondents.

WING, District Judge. It appears from the record of the commissioner, which is before this court on certiorari, that a complaint was filed before the commissioner, sworn to by Joseph E. Rogers, who therein states that he has been instructed and authorized by the Attorney General of the province of Ontario to prosecute extradition proceedings against George W. Herskovitz, and that he is informed and believes that on a certain date the said Herskovitz did commit the crime of perjury within the jurisdiction and government of Great Britain. Then follows what purports to be a more particular specification of the offense. It is by virtue of article 10 of the treaty between Great Britain and the United States of 1842, commonly known as the "Ashburton Treaty," and section 5270 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3591], that this complaint is required to be filed. The sec-

tion referred to provides that either justices of the Supreme Court, a Circuit Judge, a District Judge, or an authorized commissioner may issue a warrant for the apprehension of a person charged with having committed within the foreign jurisdiction any of the offenses provided for by treaty or convention. Warrant was issued by the commissioner, based upon this complaint, and examination had.

The first objection made by counsel for the petitioner to the legality of his detention is that the complaint does not sufficiently describe the offense of perjury, in that it omits to state before what officer the oath was taken, the name of the officer, and that he had authority, by the laws of Canada, to administer an oath. The complaint in extradition cases is not required to be drawn with the certainty and definiteness of an indictment, and the rule which applies to complaints before our local magistrates is the one which ought to govern in deciding whether or not the complaint is so vague and indefinite in its terms as not sufficiently to apprise the person arrested of the offense with respect of which he is to be examined. I do not find that the complaint in question is of such character as to be insufficient to give jurisdiction to make the examination which is contemplated by the treaty.

Article 10 of the treaty of 1842 between the United States and Great Britain provides as the prerequisite of extradition that "this shall be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had there been committed." By the article of the treaty referred to it is provided that "upon complaint made under oath" warrant may issue. The commitment is the direct result of the examination, not of the complaint.

In examining the records of the proceedings before the commissioner, I find that Joseph E. Rogers testified to his official connection with the demanding government, and to his instructions received from the Attorney General, and attaches a written authority from the Attorney General; so that there can be no question that the demand for the petitioner is actually made under the authority of the province of Ontario. Alfred H. Clark, Esq., testifies that he is county crown attorney for the county of Essex, in the province of Ontario, and, under oath, furnishes a copy of the Criminal Code, which he says is published by the authority of the Parliament of Canada. Referring to these statutes, he testifies as to what the statutory law of Canada is with respect to the crime of perjury, and the necessity of a person applying for a license to marry making oath as to the age of the person whom he is licensed to marry. James Oliver testifies to the fact that the petitioner took an oath before him, and signed an affidavit, which is produced, and made part of the record. He further testifies that he is an issuer of licenses; that under the law a person is required to make affidavit of the character referred to before a license is granted by him; and that such was the requirement of the law at the time of

the execution of the affidavit by the petitioner. He identifies the paper as the affidavit of George W. Herskovitz. The signature to this paper as being that of George W. Herskovitz is otherwise testified to in the examination by those claiming to be familiar with his signature. The affidavit referred to shows that the affiant thereto stated upon his oath that Clara Raymond was over the age of 18. It is testified by Andrew S. Raymond, father of Clara Raymond, that she was only of the age of about 15 years, and that he had made the fact known to Herskovitz prior to the time when he took the oath complained of. The testimony of John P. Hincks is to the effect that he was clergyman and rector of All Saints Church in Windsor, and authorized to solemnize marriages; that he solemnized the marriage between the petitioner and Clara Raymond, and that he did so upon the strength of the license procured to be issued by Herskovitz by the affidavit in which he is claimed to have committed perjury. On page 52 Mr. Raymond testifies that he made affidavit or a complaint against the petitioner in Canada after consultation with the chief of police and the chief magistrate, Mr. Bartlett. Upon cross-examination Mr. Raymond testifies that as a result of his complaint filed in Canada a warrant was issued and inclosed to him, which warrant and the envelope inclosing it were found in the record, marked "Exhibit No. 8W," with the letter of inclosure from G. Wills, chief of police.

By section 5270, already referred to, concurrent jurisdiction is given to the several officers named in the statute to issue warrants, hear examinations, and to commit in extradition proceedings. This, then, is a collateral attack upon the judgment of a concurrent court. It is too well settled to require the citation of authority that the writ of habeas corpus cannot be used as a method of reviewing proceedings as if upon error, and that judgments or findings of courts of competent jurisdiction cannot be set aside or avoided by this procedure because of error. Under the provisions of the statute the commissioner had full jurisdiction of the subject-matter, and there is no question but what he had jurisdiction of the person of the petitioner. I think the disclosures made at the examination have, however, cured any defect in the complaint.

The question raised by counsel for the petitioner with respect to the testimony of Alfred H. Clark on the subject of the laws of Canada is one which could only properly be raised upon error.

If these proceedings had been with respect to an offense charged to have been committed in Lucas county, and held before a justice of the peace at that county, and had resulted in a commitment, I do not think it would be seriously claimed that the petitioner should be released by writ of habeas corpus. The commitment, then, is not a nullity for the reason that it was the result of an examination before an officer having jurisdiction, and founded upon testimony tending to show the guilt of the person charged.

It is further urged by counsel for the petitioner that, because there is evidence in the record that this proceeding was instigated by Andrew S. Raymond for some ulterior purpose connected with

a suit for accounting brought by the petitioner against Raymond and a suit for divorce brought by the wife of the petitioner, the petitioner should be discharged. I do not think that the existence of either a malicious or other ulterior purpose can have the effect to nullify extradition proceedings otherwise valid. In the cases cited, to support the contention it will be found that other reasons than the existence of malice were the foundations of the action of the court.

For the reasons already given, I have not deemed it important to consider any questions or error raised.

It is ordered that the writ be discharged, and the petitioner remanded.