## Ex parte ZENTNER.

### (District Court, D. Massachusetts. May 12, 1910.)

### No. 298.

1. EXTRADITION (§ 11*)—INTERNATIONAL—COMPLAINT—FORGERY.

Where a complaint in proceedings to extradite accused for forgery set forth the offense with sufficient particularity to advise him of the offense wherewith he was charged, it was not defective for failure to set forth copies of the instrument alleged to have been forged; the particularity of an indictment not being required in such a complaint if a crime within the extradition treaty is substantially charged.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 12; Dec. Dig. § 11.*]

2. EXTRADITION (§ 14*)—DEPOSITIONS—TRANSLATION.

Where certain depositions attached to extradition papers were in the German language, and the translator testified before the commissioner that he had dictated the translation to a typewriter, that he had examined and compared it as written out, and that the translation was correct, there being no claim by petitioner that the translation was in any respect inaccurate, it was no objection to the translation that the typewriter did not also testify with reference thereto.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 16; Dec. Dig. § 14.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** EXTRADITION (§ 10*)—PROCEEDINGS—DEMAND BY FOREIGN GOVERNMENT.

No prior demand by a foreign government is necessary before the arrest of a fugitive from the justice of such government in extradition proceedings.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 11; Dec. Dig. § 10.*]

**4.** HABEAS CORPUS (§ 92*) — SCOPE OF INQUIRY — EXTRADITION — EVIDENCE— SUFFICIENCY.

A fugitive from the justice of a foreign government is not entitled to his discharge from arrest in extradition proceedings on habeas corpus for insufficiency of evidence, if the commissioner before whom he was examined had before him competent legal evidence on which to exercise his judgment, whether the facts shown sufficiently establish petitioner's criminality, for purposes of extradition.

[Ed. Note.—For other cases, see Habeas Corpus, Dec. Dig. § 92.*]

**5.** EXTRADITION (§ 14*)—EVIDENCE—FORGERY.

Evidence offered before a commissioner in extradition proceedings for forgery alleged to have been committed in a foreign country *held* sufficient to justify petitioner's return.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 16; Dec. Dig. § 14.*]

**6.** EXTRADITION (§ 11*)—VARIANCE—MATERIALITY.

In proceedings to extradite petitioner for forgery alleged to have been committed in a foreign country, a variance between the complaint and the evidence as to the dates of the instruments alleged to have been forged was immaterial.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 12; Dec. Dig. § 11.*]

**7.** EXTRADITION (§ 14*)—FORGERY—FRAUDULENT INTENT.

Where in proceedings to extradite petitioner for forgery, there was evidence that he raised two acceptances beyond the amounts named in figures on them at the time they were given him, and then put them in circulation without the acceptor's knowledge or consent, such proof was sufficient evidence of a fraudulent intent for purposes of extradition.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 16; Dec. Dig. § 14.*]

**8.** HABEAS CORPUS (§ 85*)—EVIDENCE—EXTRADITION.

In habeas corpus proceedings to secure petitioner's release from arrest in extradition for alleged forgery committed in a foreign country, evidence that, by reason of business relations between petitioner and the persons claimed to have been defrauded, they were not entitled to claim that petitioner's act amounted to more than a breach of trust, was immaterial.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 77, 78; Dec. Dig. § 85.*]

**9.** EXTRADITION (§ 14*)—NATURE OF PROCEEDINGS—ATTITUDE OF COMPLAINANTS.

Where extradition proceedings for forgery were in the name of the German government under treaty with the United States, the attitude or motives of the persons alleged to have been defrauded were immaterial.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 15; Dec. Dig. § 14.*]

**10.** EXTRADITION (§ 5*)—TREATY—OFFENSE—FORGERY.

Treaty with Bavaria, Sept. 12, 1853, art. 1, 10 Stat. 1022, authorizing extradition of persons charged with forgery or utterance of forged papers, was applicable where it appeared that written instruments had been falsely uttered by accused for fraud and deceit, and that the instruments

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

were of such a description that they might defraud or deceive if issued with such intent.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 6; Dec. Dig. § 5.*]

Petition by Heinrich Zentner for habeas corpus to obtain his discharge from custody and extradition proceedings. Denied.

Eyges, Wyner & Freedman, for petitioner.
E. Mark Sullivan, Asst. U. S. Atty., for U. S. Marshal.
Theodore H. Tyndale, for German Consul.

DODGE, District Judge. On May 4, 1910, a warrant for the commitment of this petitioner, under Rev. St. § 5270 (U. S. Comp. St. 1901, p. 3591), was issued by William A. Hayes 2d, a United States commissioner duly authorized by this court to issue warrants for the arrest of fugitives from justice of foreign governments between which and the United States there are treaties and conventions of extradition. The petitioner is in the custody of the United States marshal under that warrant. Upon the present petition, filed May 4, 1910, the marshal was ordered to show cause why a writ of habeas corpus should not issue. The petition, besides praying for the issuance of the writ of habeas corpus, asked that a writ of certiorari might issue to the commissioner, directing him "to certify to the court the record by which the cause of your petitioner's commitment may be examined and its legality investigated." A writ of certiorari was issued accordingly, and the record of the proceedings before the commissioner, submitted by him as directed, was before the court at the hearing upon the order to show cause, and has been duly considered.

A treaty for extradition between the United States of America and the King of Bavaria was concluded September 12, 1853, ratified November 1, 1854, and proclaimed November 18, 1854. Bavaria has since become a part of the German Empire. The treaty is now in force. 10 Stat. 1022. By article 1 of the treaty both governments agreed to deliver up upon requisition all persons who being charged, among other crimes specified, with the crime of forgery or the utterance of forged papers, committed within the jurisdiction of either, should seek an asylum or be found within the territory of the other. Article 1 further provides that this should only be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged should be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed. There is no dispute as to these facts. The commissioner's record in the case shows that on March 31, 1910, there was filed before him a complaint, sworn to by the Imperial German Consul at Boston, wherein were set forth charges against Heinrich Zentner, the present petitioner, which may be summarized as follows: That he (1) on October 10, 1907, forged a draft accepted by C. H. Arnold, the drawee, by increasing the amount thereof from 2,184 marks 79 d. to 12,184 marks 79 d.; (2) on October 10, 1907, forged a draft accepted by said Arnold by increasing its amount from 2,973 marks 73 d. to

12,973 marks 73 d.; and (3) on October 30, 1907, being authorized by the firm of J. F. Meier to issue four drafts accepted by them for 20,000 marks in all, forged said four drafts by increasing their amounts to the total amount of 30,229 marks 1 d. It further appears by the commissioner's record that he issued his warrant for Zentner's apprehension, that Zentner was apprehended and brought before him, and that evidence of Zentner's criminality was by him thereupon heard and considered. It also appears that he deemed the evidence sufficient to sustain the charge under the provisions of the treaty or convention referred to, that he has accordingly issued his warrant for Zentner's commitment to the proper jail to await the action of the executive department, and that this is the warrant under which Zentner is now held. Upon it the marshal relies, as justifying him in holding Zentner, and as cause why the writ should not issue. In his present petition for habeas corpus Zentner alleges that his detention is illegal, upon grounds which are hereinafter separately considered.

[1] 1. It is claimed that the complaint is defective because it does not set forth copies of the instruments alleged to have been forged. The commissioner ruled, and with his ruling I agree, that the complaint, which appears in full in his record, sets forth the offense with sufficient particularity to advise the accused of the offense wherewith he is charged. The amounts of the drafts are stated in it, and they are alleged to have been accepted by the drawees before the alterations charged were made. The particularity of an indictment is not required if a crime within the treaty is substantially charged. U. S. v. Herskovitz (D. C.) 136 Fed. 713; Grin v. Shine, 187 U. S. 181, 23 Sup. Ct. 98, 47 L. Ed. 130; Yordi v. Nolte, 215 U. S. 227, 30 Sup. Ct. 90, 54 L. Ed. 170.

[2] 2. Certain depositions accompanied by papers or copies of papers therein referred to, all in the German language, purporting to be properly and legally authenticated, so as to entitle them to be received by the German tribunals as evidence of Zentner's criminality, were introduced before the commissioner. They form part of his record, as does also what purports to be an English translation of them. The authentication of the papers themselves is not questioned. The translation was typewritten. The translator testified before the commissioner that he had dictated the translation to a typewriter, that he had examined and compared it as written out by her, and that it is correct. The petitioner objects that the typewriter did not also testify with reference to it. But he has not claimed that the translation is in any respect inaccurate, although the German original, as the commissioner has certified, was read to him in open court. I agree with the commissioner's ruling that he was warranted in accepting the translation as correct without any evidence from the typewriter.

[3] 3. The petitioner objects that no demand by the foreign government for his return has been shown prior to the institution of the proceedings before the commissioner. The commissioner ruled that no such demand need be shown. With this ruling I agree. No such prior demand is now held to be necessary to the validity of

proceedings like these. Benson v. McMahon, 127 U. S. 457, 460, 8 Sup. Ct. 1240, 32 L. Ed. 234; Grin v. Shine, 187 U. S. 181, 193–195, 23 Sup. Ct. 98, 47 L. Ed. 30; Re Schlippenbach (D. C.) 164 Fed. 783.

[4] 4. The remaining objections urged dispute the sufficiency of the evidence before the commissioner to sustain the charges made in the complaint. If the commissioner had before him competent legal evidence on which to exercise his judgment whether the facts shown sufficiently establish Zentner's criminality for the purposes of extradition, the court cannot review his decision on habeas corpus. Re Luis Oteiza, 136 U. S. 330, 10 Sup. Ct. 1031, 34 L. Ed. 464; Ornelas v. Ruiz, 161 U. S. 502, 16 Sup. Ct. 689, 40 L. Ed. 787; Terlinden v. Ames, 184 U. S. 270, 22 Sup. Ct. 484, 46 L. Ed. 534. I am only to inquire, therefore, whether or not there was any competent evidence tending to support the charges made in the complaint, before the commissioner. If there was, it is not open to the petitioner to argue that a different conclusion ought to have been reached on the evidence as a whole. This consideration is important in the present case, because the petitioner testified in his own behalf before the commissioner, and gave evidence tending to contradict or explain the written evidence relied on by the foreign government.

[5] The petitioner himself, however, admitted before the commissioner that, having received from Dietenhofer, who does business under the name of C. H. Arnold, the draft referred to in the foreign evidence as "Exhibit 1," bearing when he received it Arnold's acceptance, the amount 2,184 in figures, and the due date, he inserted the figure 1 before the figures 2,184 and wrote in everything else which now appears on the draft, making it thereby appear to be an accepted draft for 12,184 marks 79 d., and signed it. He further admitted that, having received from Arnold the draft marked "Exhibit 2," bearing Arnold's acceptance, the figures 2,973, and the due date, he inserted the figure 1 before 2,973, filled in everything else now appearing on the draft and signed it, so as to make it appear to be an accepted draft for 12,973 marks 73 d. It was also his own testimony that, having received four drafts accepted in blank by J. F. Meier, being Exhibits 5, 6, 7, and 8, he filled in the blanks above the acceptances, or caused them to be filled, so as to make the drafts read as the exhibits now show, that is, as accepted drafts for 30,229 marks 1 d. in all. His testimony also was, it is true, that nothing had been said between Meier and himself as to the amounts to be filled into the four acceptances last mentioned, and that Meier never objected when he learned the amounts which had been filled in. But on this point there is a conflict between him and Meier, whose evidence in the depositions transmitted is, that 20,000 marks had been expressly agreed as to the total amount for which the four drafts should be made out, and that he not only remonstrated but demanded the return of 10,000 marks as soon as he learned that Zentner had filled them out for more than 30,000 marks. Dietenhofer's evidence, also in the transmitted depositions, is expressly to the effect that the filling out of the Arnold acceptances (Exhibits 1 and 2) for 10,000 marks more than the sum originally indicated by the figures on each

was wholly without his knowledge, and that he not only remonstrated but threatened Zentner with legal proceedings unless the altered acceptances were returned. As to these two acceptances, at least, there was, therefore, uncontradicted evidence of fraudulent alteration. There was uncontradicted evidence to show that Zentner negotiated the drafts filled out as above, obtained the proceeds, and soon after fled from Germany to this country, having been declared bankrupt. If his own evidence and the other evidence above summarized had been all the evidence before the commissioner, I think it would have been competent legal evidence sufficient to warrant him in finding Zentner's criminality established for the purposes of extradition. The commissioner, however, had also before him a considerable amount of other evidence tending strongly to confirm that which I have cited.

It was urged on the petitioner's behalf that the depositions transmitted contain much of what is called with us "hearsay" or "opinion" evidence. It seems to me, however, that, if every statement in the foreign depositions fairly open to this objection be disregarded, the effect of what remains will be substantially as indicated above.

[6] It was urged that the evidence shows the Arnold drafts to have been filled in on October 17, 1907, instead of on October 10th, as the complaint alleges; also that the evidence fails to show the date on which the Meier drafts were filled in, the complaint alleging October 30, 1907, as the date. The Arnold drafts are dated October 10th. The Meier drafts bear the dates September 25th and October 5th, but Meier's evidence is that he gave them in blank to Zentner at the end of October. If there can be said to be a variance between the complaint and the evidence in the matter of dates, I agree with the commissioner that it is immaterial.

[7] It was urged that the evidence showed no fraudulent purpose on Zentner's part. It tended to show, however, as cannot be denied, that Zentner at least raised the two Arnold acceptances beyond the amount named in figures upon them when given him, and then put them in circulation, without the acceptor's knowledge or consent. This, as the commissioner rightly ruled and found, was sufficient evidence of a fraudulent purpose on Zentner's part for the purpose of the proceedings before him.

[8] It was urged that previous commercial relations and dealings in regard to acceptances between Dietenhofer and Zentner or between Meier and Zentner appear from the evidence, and that authority given Zentner to fill in the Meier drafts also appears, such as prevents Zentner's dealings with any of the acceptances from being regarded as criminal, and required them to be treated as amounting to breaches of trust at the most. However strong an argument might be made elsewhere to this effect upon all the evidence, it is not an argument entitled to any weight for the purposes of this decision, it not having prevailed with the commissioner, who had before him at least some competent evidence of the commission of the criminal acts charged.

[9] It was urged that Meier and Dietenhofer do not appear by the evidence to have taken any steps to restrain the circulation of the

drafts after learning the amounts for which Zentner filled them out; that they do appear by the evidence to have compromised and settled claims made against them, as acceptors of the drafts, by paying part of the total amounts thereof as filled out, whereas if the drafts were forged they were under no liability; that there is no evidence of any criminal prosecution against Zentner in the German courts before January, 1910, and none that Zentner's whereabouts has been unknown since November, 1907; and that there is thus indicated want of good faith in the institution of the present proceedings, and the conclusion warranted that they have been taken "in pursuance of civil remedy." But the fact that the proceedings are in the name of the German government under the treaty obviously excludes any inquiry into the attitude or motives of Meier or Dietenhofer.

[10] It was urged that no offense under the German penal code is set forth in the complaint or appears from the evidence, and that there is nothing in either to show any acts on Zentner's part amounting to forgery as understood by the laws of the United States. The commissioner ruled that the treaty provisions were applicable if it appeared that written instruments had been falsely altered by Zentner for the purpose of fraud or deceit, and that the drafts referred to were instruments of such a description that they might defraud or deceive if issued with that intent. I am unable to doubt that these rulings were right, or that there was a sufficient charge of forgery within the meaning of the treaty and competent evidence in support of the charge.

This result requires me to decline to issue the writ, and would require me to do so even if I saw reason to doubt, as I do not, that the commissioner was right in holding that the evidence as a whole was sufficient to sustain the charge.

The petition is denied.