## Case No. 10,679.

### In re PALMER.

[18 Int. Rev. Rec. 84; 5 Chi. Leg. News. 557.]

District Court, E. D. Pennsylvania. 1873.

EXTRADITION—TREATY WITH GREAT BRITAIN—WHAT IS MURDER.

1. The lowest grade of inexcusable homicide is within the generic term murder, as used in the treaty of extradition, of 1842, between the United States and Great Britain.

2. The extradition of a fugitive being demanded under this treaty, the tribunal where he is found will not inquire as to the grade of guilt, and not being competent to acquit or convict, the warrant must issue.

3. Where a judge had ordered a warrant of extradition to issue, the secretary of state, upon a review of the case, refused to issue the warrant. and the accused was discharged.

This was a petition by the British consul at Philadelphia for the extradition of Benjamin Palmer, upon the charge of murder. By the depositions taken in the cause it appeared that Benjamin Palmer shipped on the bark J. B. Duffus on April 15, 1873, as boatswain or second mate. That on June 8, 1873, while the bark was at sea, the morning being squally, and the ship not steering well, the master ordered Palmer to lower the spanker. At the time this order was given it was Palmer's watch on deck. In his watch, among others. was John McDonnough, who, when the order was given, went to the throat halyards. The sail was lowered about half way down, when it jammed upon the mizzen mast. Palmer got on the spanker boom to clear the sail, when suddenly the gaff, weighing about five hundred pounds. got clear and was coming down by the run, he being immediately under it. The master seeing the danger. quickly called to him, "Look out, Mr. Palmer, the gaff is coming on you." Palmer instantly jumped from the boom on to the starboard side of the ship. McDonnough had left his position at the throat halyards, and was standing abreast of the mizzen rigging in the alleyway between the rail and the after house, on the starboard side of the ship. As Palmer jumped he and McDonnough came together; one of Palmer's feet struck McDonnough in the stomach and so injured him that shortly thereafter he died. As to whether or not Palmer kicked McDonnough, the depositions were somewhat contradictory. The master testified that as Palmer jumped "to save himself from going overboard, he caught the mizzen rigging with his hands, that brought his feet about opposite the stomach of McDonnough; the boatswain's feet came in con-

tact with McDonnough about his stomach." Four of the crew, however, agreed that the distance between where Palmer struck the ship when he jumped, and where McDonnough stood, was several feet; that the toe of Palmer's boot struck McDonnough, but whether it was accidental or purposely done, they could not say, except one man, who said it was "accidental out of passion." All of the witnesses agreed that Palmer had no quarrel with McDonnough, that he always acted kindly toward all the men, and that after McDonnough was hurt he endeavored to restore him.

The depositions being reported to the court, Silas W. Petit, Esq., and John R. Read, Esq., as counsel, appeared for the government of Great Britain, but made no argument, as the court did not desire to hear any, except on behalf of the accused.

J. Warren Coulston, Esq., counsel for Palmer, argued: (1) The proof in all cases under a treaty of extradition should be not only competent, but full and satisfactory, that the offence has been committed in the foreign jurisdiction, sufficiently so to warrant a conviction, in the judgment of the magistrate, of the offence with which he is charged, if sitting upon the final trial and hearing of the case. No magistrate should order the surrender short of such proof. Ex parte Kaine [Case No. 7,597]. (2) The court must pass upon the weight as well as the competency of the testimony, and a fugitive is to be surrendered upon such evidence only, as, being submitted to the jury, would probably secure his conviction of the offence alleged. In re Henrich [Id. 6,369]; In re MacDonnell [Id. 8,772]. No judge would sustain a verdict of guilty of any offence under the testimony in this case. (3) The treaty requires the specific application of the definitions to be conformable in particular cases to the jurisprudence and legislation of the respective places where the parties may be arrested; and likewise requires the application of local rules of decision, as to the sufficiency of the evidence. Muller's Case, 5 Phila. 292, etc. (4) The evidence is not sufficient to sustain the charge of murder. In the worst aspect of the case, it could only be manslaughter, which, under the laws of Pennsylvania, may be either voluntary or involuntary. Manslaughter is voluntary when it happens upon a sudden heat, involuntary when it takes place in the commission of some unlawful act. (5) It is clear that the extradition treaty between the United States and Great Britain (8 Stat. 576) does not apply to manslaughter. If this be doubtful, the court should follow the analogy of the act of congress of March 3, 1825 (4 Stat. 115), providing for the punishment of the crime of murder on the high seas, on board of an American vessel. It has been held that this act does not include the offence of manslaughter. U. S. v. Armstrong [Id. 14,467].

CADWALADER, District Judge. The homicide in question having occurred upon the high seas, in a British vessel, was committed within British jurisdiction. Whether it was an excusable homicide, and if not, what was the grade of guilt, are questions for the decision of a British tribunal. This does not preclude the observation that if a crime has been committed, it was of the lowest grade of inexcusable homicide. The offence in question was, nevertheless, if punishable at all, within the generic description of murder, as the word is used in the treaty of 1842. And, as no tribunal in the United States can exercise jurisdiction to convict or acquit, the warrant of extradition must be granted, if the application for it shall be insisted on. It may not be improper to add that, if the offence had been cognizable here, I would have admitted the accused party to bail during the hearing, because the peculiar circumstances of the charge would have justified such an exception from the ordinary course of procedure in cases of homicide.

I consider the application for extradition as made by Sir Edward Thornton, the diplomatic representative of the British government, though it is made in the name of the consul. It occurs to me that the consul may perhaps desire to communicate with Sir Edward Thornton before deciding whether to insist on the application for a warrant. The case may therefore stand over until Wednesday next, unless the accused party objects to the delay.

And afterwards, on Wednesday, the 25th day of June, A. D. 1873, the said consul praying that a warrant of extradition issue, it is issued accordingly, and is hereto subjoined. And all the said depositions, examinations, warrants, orders, and other documents, are therewith returned and certified by the said judge, at Philadelphia, in the said district, on the day last aforesaid.

"United States of America, Eastern District of Pennsylvania—ss.: To the Marshal of the United States: In the matter of Benjamin Palmer, charged with murder, on the British bark J. B. Duffus, on the high seas. This case having been heard before me, on petition of George Crump. Esq., acting counsel for her Britannic majesty at the port of Philadelphia, that the said Benjamin Palmer be committed for the purpose of being delivered up to justice, under the provisions of the treaty made between the United States and Great Britain on the 9th day of August, A. D. 1842. I find and judge that the evidence produced against the said Benjamin Palmer is sufficient in law to justify his commitment on the charge of murder, had the crime been committed within the United States. Wherefore I order that the said Benjamin Palmer be committed pursuant to the provisions of said treaty, to abide the order of the president of the United States in the premises. Given under my hand and the seal of said court, at Philadelphia, this twenty-fifth day of June,

A. D. 1873. (Signed) John Cadwalader, Judge. (Seal.)"

NOTE. After the evidence .in the case had been certified to the secretary of state, the case was reargued before him by the counsel for the prisoner. The secretary of state finally refused to issue the warrant of extradition, and Benjamin Palmer was released from imprisonment. While the case was pending in Washington, the British minister, Sir Edward Thornton, raised the question whether the secretary of state has the right to refuse a warrant of extradition, ·after a judicial tribunal had certified, under the treaty, that the evidence was sufficient to sustain the charge made against the accused, and has called the attention of his government to the matter· for the purpose of obviating the difficulty in the future, if possible.