KENNEY, In re. See Case No. 6,621.

KENNEY (PHILADELPHIA & R. R. CO. v.). See Case No. 11,088.

## Case No. 7,710.

KENNICOTT et al. v. WAYNE COUNTY.

[6 Biss. 138; [1] 7 Chi. Leg. News, 41.]

Circuit Court, S. D. Illinois. June, 1874.[2]

MUNICIPAL BONDS — LETTERS BETWEEN THIRD PARTIES — BONDS GIVEN FOR GOODS — CORRECTION OF MISTAKES — PROOFS BEFORE MASTER — BONA FIDE HOLDER — PRESUMPTION.

1. Letters between third parties engaged in negotiating the bonds are not competent evidence to impeach them in the hands of parties claiming to be bona fide holders, unless they are shown to have had some connection with such letters.

2. The fact that bonds were received from the treasurer of the railroad company in payment of goods, is not of itself sufficient to bar the merchant from claiming as a bona fide holder, if the goods were of such a character as would be of value to the company in the construction or operation of the road.

3. Where a case has been to the supreme court, the circuit court, in passing upon a collateral branch of the case, will not admit that that court has made a mistake in regard to any facts which it has actually passed upon. The party moving to correct such mistake must go to the supreme court for relief.

4. Under an order requiring claimants upon bonds to appear before a master and prove their claims, a presentation of the bonds by an agent or attorney is sufficient, though the proofs were taken in another state, if no suspicion has been thrown upon the bona fides of the bonds.

5. Upon the presentation of a negotiable bond the presumption of law is that the person presenting is a bona fide holder, and until evidence is introduced tending to negative that presumption, he is under no obligation of proving himself a bona fide holder.

[See note at end of case.]

[This was a bill in equity by John W. Kennicott and others against the board of supervisors of Wayne county.] These were exceptions to a master's report, finding certain claimants to be bona fide holders of bonds issued by the supervisors of Wayne county, Illinois, to the Mount Vernon Railroad Company, which bonds had been contested by the county, and had been declared valid by the United States supreme court. The opinion of that court, with a full history of the bonds, will be found in Kennicott v. Supervisors, 16 Wall. [83 U. S.] 452.

S. A. Goodwin, W. B. Scates, John A. McClernand, and M. Rorke, for complainants.

Henry Crawford and M. Knapp, for defendants.

DRUMMOND, Circuit Judge. We have not examined the printed record in this case as it appears filed in the supreme court. We have only examined the testimony taken since. Under the case as it stood in the supreme court, it was decided that the bonds were valid and that the mortgage which was given to secure them was a valid security; and the only question, therefore, now before us is whether the bonds and coupons presented by the various parties-complainant are held by them in good faith and for value received.

Upon an interlocutory decree the case was referred to the master, and he was directed to inquire as to the amount of these claims and the parties who held them. A supplemental report was accordingly made by the master. To this report no exceptions are filed. It was understood, however, that the objection might be afterwards taken that these parties were not bona fide holders.

There are some objections to the evidence, which, perhaps, the court ought to decide. For example, as to the letters that were introduced between the parties, who formed, to a greater or less extent, "a ring," as it was called, by which the county of Wayne was defrauded of these bonds, or of the bonds themselves. None of these letters are written by any of the bond-holders; they are simply letters between the various persons who had some

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed in 94 U. S. 498.]

connection with the bonds, with their negotiation, their delivery or their transfer; but they are mere private letters which ought not to bind the bond-holders, unless connection is shown between them and the letters themselves. I do not understand that anything of that kind is proved, and they become, therefore, as to them, res inter alios acta, and by which, of course, they should not be bound.

They are, therefore, entirely incompetent to affect any questions in this case. There are only a few of the claims to which it is necessary to refer, to determine whether or not these bonds and coupons are in the hands of bona fide holders. We have come to the conclusion that all which have been presented are in such hands.

In relation to the claim of Ransome & Co., boot and shoe dealers, it is said that they sold goods and received bonds from Mr. Lewis in payment, Mr. Lewis being the treasurer of the railroad company. Now the mere fact that the goods were received for the bonds, while it may be a circumstance requiring explanation, is not, of itself, sufficient to prevent a party being a bona fide holder. Mr. Lewis was the treasurer of the company; the bonds were, or might have been, in his hands, for negotiation, transfer or sale. It may be that certain goods were as valuable for the construction of a railroad as money itself, for example, iron, or any of the materials which would go into the construction of the road. So any goods which could be transferred to, or used by, the operatives of the road, and which would be received by them in compensation for their services which they had or might render, would be just as valuable as money. The mere fact that goods were received, does not prevent the bonds being held in good faith and for value. There must be circumstances showing that the purchaser of the bonds knew that there was a corrupt or fraudulent motive on the part of the vendor, or person transferring the bonds, in order to make him a holder in bad faith. There is nothing of the kind shown here. On the contrary, it is shown that they were the holders in good faith and for value, but that they received them in payment for goods instead of money.

As to Mr. Myers' claim, the chief objection made to that grows out of facts contained in the original record, and upon which we think the supreme court has substantially passed, and with which we do not feel inclined to interfere. If the supreme court made a mistake in relation to the facts, it is only respectful for this court to require the parties to go to that court to have it rectified. The supreme court say in effect that, on the assumption that certain principles of law stated by that court were correct, there was no defense.

It is objected that this matter was referred by an interlocutory order to the master, and that parties who were claimants upon these bonds were required to appear before him at his office in Springfield, on or before a certain day named, and prove their claims.

Under this interlocutory order notices were given to the opposite counsel and by publication, and proofs have been taken, under the acts of congress, in New York, and presented before the master in the form of depositions, and the objection is, that this is not a literal compliance with the order; that they ought all to have been taken personally before the master.

These proofs related to the bonds themselves, which were the subject of controversy, and as to which the supreme court had decided that the security given by the county of Wayne was valid, and therefore all that need appear was that these parties, having these bonds or coupons, were the holders in good faith, and we think that they may be presented before the master here, through their agents or attorneys upon proof thus taken, under the acts of congress. It is true that the order might have been more general, and might have stated that proof in relation to the bona fide character of the holders might be taken elsewhere; but where the bonds are presented before the master, and there is nothing to throw suspicion upon them, it is not material how they are presented. They are within the scope and spirit of the order. If they are presented by the claimants by their agents, or by their attorneys, and the fact is that proof has been taken on notice, or that petitions have been filed fortified by affidavit, we think it ought not to prevent the operation of the interlocutory order, and this independent of the seventy-seventh rule. They are in the largest sense presented before the master in Springfield, though proof may have been taken in New York. Now in some of the cases the bonds are produced before the master, the holders thereof stating that they are the holders in good faith. The presumption of law is that they are such holders. These bonds have all the characteristics of negotiable instruments. When a man presents himself before the master with such a bond in his hand, it is a presumption of law that he is a bona fide holder. It was objected by counsel for the defendants that there was no proof as to the bona fides of these holders. If there had been any evidence introduced calculated to throw suspicion upon the bonds, then it might have been proper for the court to give the defendants an opportunity of introducing evidence upon that point; for instance, in relation to the bonds of Mr. Crooks, who presents them to the master, who makes a supplemental report in relation to them. Now if there was any evidence calculated to throw suspicion upon these particular bonds, then the court might have required the claimants to supplement the evidence created by the holding and presenta-

tion of the bonds by some additional evidence. But that has not been done here. They were asked if they had any evidence on that subject, but none has been produced, and so we have to take it as a presumption of law, not met by anything to countervail it. that these parties are the holders of the bonds in good faith and for value.

These considerations, I think, dispose of all the questions in the case. We cannot lose sight of the fact that the substantial defense in the case has been considered by the supreme court and decided against the defendants; and that therefore the only question is an incidental question, growing out of the position of the bond-holders. No doubt the county of Wayne has been much wronged in this case. Gross injustice, and it may be fraud, has been practiced upon the county by its own citizens and by its own officers; but unless these bond-holders can be connected with that fraud, by notice, or by some circumstance calculated to throw suspicion upon their possession of the bonds, it would be contrary to the first principles of equity and right that they should suffer for the wrong committed by the officers of Wayne county, or the railroad company, who had the disposal of the bonds.

It may perhaps be questioned whether municipal bonds should ever have been held to be valid, as affecting counties, towns and other similar public bodies, because so large a number of people and so large an amount of property should not be affected by a wrong or a fraud practiced by the individuals who have the sale and the transfer of such bonds. But that question has been foreclosed. It is not an open question now in the federal courts. It has been universally held that municipal authorities can make and issue bonds, provided there is a law justifying it, and that the officers employed and elected by them can negotiate them. Therefore these municipalities should be more careful as to the men they intrust with their funds. They should select honest men. If they do not they must stand by the consequences, just as a man must who employs an agent to do his business. If the agent commit a fraud, the person with whom he has transacted his business, and who has acted in good faith, cannot be permitted to suffer. The person who has employed him and held him up to the world as his agent must suffer. This principle has been applied to municipalities in cases like this. Therefore if it be true that the county of Wayne has been wronged in this transaction, it has been by its own agents, and it must suffer the consequences of the breach of trust committed by them.

It has occurred as a question to us whether we should direct the sale of this property without redemption. We have come to the conclusion, under the circumstances of the case, that we will not do so; that we will require the property to be sold in parcels not exceeding 160 acres, and authorize a redemption. We think this would be more just to the county, and more just also to parties who may be holders under a subsequent incumbrance, of the whole or any part of this property, and it will tend to produce a larger sum of money for the benefit of the creditors than a sale in quantity. If the plaintiffs become the purchasers, they may thus be obliged to give something near the value of the land, in order to avail themselves of the security they have.

A decree will be prepared in accordance with these principles.

[NOTE. An appeal was then taken by the defendants to the supreme court, where the decree was affirmed in an opinion by Mr. Chief Justice Waite, who said that the question of the validity of the bonds was no longer open, for it is a well-settled rule that what has been decided upon one appeal cannot be re-examined in a subsequent appeal of the same suit. 94 U. S. 498. After the foreclosure, a suit was brought on the appeal, and supersedeas bond given by the county, and the court below gave judgment for the plaintiffs for the full amount of the bond. A writ of error was then taken by the defendants to the supreme court, where the judgment was reversed in an opinion by Mr. Chief Justice Waite, who said that by taking the appeal no new obligations were assumed with respect to the debt. Clearly, then, all the damages which must be answered to were such only as followed from the delay in the sale of the property. The county and its sureties cannot be called upon to make up the balance which remained after the entire proceeds of the lands had been applied to the payment of the mortgage debt. 103 U. S. 554. See, also, Case No. 7,711.]