### POWELL v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1913.)

No. 2,486.

1. EXTRADITION (§ 5*)—TREATY—LARCENY—BURGLARY.

A complaint charged that accused did commit the crime of burglary, in that he did feloniously break and enter, in New Westminster, British Columbia, a certain countinghouse, and did steal and take therefrom and carry away a large sum of money, and the commissioner's warrant of commitment was upon the charge of "burglary, larceny, and theft." The warrant was based on evidence sufficient to sustain the charge that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

accused did break and enter the countinghouse, etc., and that he did then and there steal, contrary to the statute of the Dominion of Canada. *Held,* that the complaint charged a crime, which is theft or stealing in Canada, and which is larceny in the United States, under which accused was subject to extradition, though the breaking and entering of a banking house was not burglary at common law.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 6, 7; Dec. Dig. § 5.*]

2. EXTRADITION (§ 5*)—COMPLAINT—DESCRIPTION OF OFFENSE.

If a complaint on which extradition proceedings are based intelligibly describes and identifies the offense, and the offense so described is punishable by the laws of both countries, and by any name is included in the extradition treaty, it is not material that it is not described by the same name in the laws of both countries or at common law.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 6, 7; Dec. Dig. § 5.*]

3. EXTRADITION (§ 11*)—COMPLAINT—INFORMATION AND BELIEF.

Where a complaint on which extradition proceedings were instituted alleged that it was made by the authority of and at the request of the officials of British Columbia by the British vice consul at Detroit, and that the information on which it was based was communicated to complainant by such officials, it was not fatally defective because it was made on information and belief.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 12; Dec. Dig. § 11.*]

4. EXTRADITION (§ 11*)—FOREIGN COMPLAINT AND WARRANT—CERTIFIED COPIES.

While it is advisable in extradition proceedings that certified copies of the foreign complaint and warrant be attached to and made a part of the local complaint, it is sufficient if those documents, alleging positively the guilt of the accused, are presented to the commissioner with the complaint and depositions showing probable cause are produced at the hearing.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 12; Dec. Dig. § 11.*]

5. HABEAS CORPUS (§ 30*)—EVIDENCE—INSUFFICIENCY—IDENTIFICATION OF ACCUSED.

Where accused was arrested in the United States, charged in extradition proceedings with having committed larceny from a bank in British Columbia, and the chief item of evidence in habeas corpus proceedings consisted of identification of accused by a witness who saw him near the scene of the robbery immediately afterwards, and of his possession at the time of his arrest of $2,700 of Canadian bills, identified as among those stolen, the fact that the evidence of the identifying witness was incredible, and that mere possession of the stolen property long after the robbery raised no presumption of guilt, affected only the weight of the evidence, and did not entitle accused to his release.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 25; Dec. Dig. § 30.*]

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Habeas corpus on petition of Martin Powell. From an order discharging the writ, he appeals. Affirmed.

Navin, Sheahan & Kennary, of Detroit, Mich., for appellant.

O. F. Hunt, of Detroit, Mich. (Charles Fox, of New York City, of counsel), for the United States.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. In September, 1911, there was a bank robbery in New Westminster, British Columbia. In June, 1912, due complaint was made and warrant issued thereupon by the police magistrate at New Westminster, charging Martin Powell with this crime. The complaint and warrant alleged that he "did break and enter the countinghouse of the Bank of Montreal," and that the sum of $270-000 found therein he did "then and there steal, contrary to the form of the statute," etc. In July, 1912, His Britannic Majesty's vice consul, at Detroit, made complaint before the United States commissioner that Powell was a fugitive from justice on account of this crime. Powell was arrested on the commissioner's warrant, and after hearing was committed to the custody of the United States marshal to await the extradition warrant of the Secretary of State. Powell's petition for a writ of habeas corpus was denied by the District Court, the writ which had been issued was discharged, and Powell was remanded to the custody of the marshal; and Powell appeals.

Appellant raises three distinct questions: (1) That the commissioner's warrant was insufficient (a) because contradictory or ambiguous in charging any extraditable crime, and (b) because only on information and belief; (2) that there is no evidence sufficiently tending to show Powell's guilt to authorize his commitment; and (3) that the commissioner put on Powell the burden of establishing his innocence.

[1] 1. The complaint to the commissioner says that it is in connection with the prosecution of Martin Powell "for burglary and theft," and then alleges that Powell "did commit the crime of burglary," and that he "did feloniously break and enter the countinghouse," etc., and "did steal and take therefrom and carry away," etc. The commissioner's warrant of commitment was upon the charge of "burglary, larceny, and theft," and the warrant proceeds to find that there is evidence sufficient to sustain the charge that Powell "did break and enter the countinghouse," etc., and the sum of money found therein "did then and there steal, contrary to the form of the statute of the Dominion of Canada." The extradition treaty (7 Federal Statutes Annotated, 603) covers larceny, burglary, and housebreaking or shopbreaking. The Canadian Revised Statutes of 1906 (chapter 146, §§ 344 and 347) define the crime of "theft or stealing" in a comprehensive way, which includes the common-law crime of larceny. They do not retain the word "larceny" as the name of any crime. Whether they modify the common-law definition of burglary we are not advised. In Michigan, these offenses remain as defined at common law, but with statutory additions and modifications not now important.

Appellant relies mainly upon the claim that breaking and entering a banking office is not a common-law burglary, and hence that the crime of burglary is not charged. We do not regard it as necessary to determine all the questions to which this inquiry would lead. The complaint clearly does charge a crime, which is theft or stealing in

Canada, and which is larceny in this country. If it charges larceny, it is a sufficient complaint, under the treaty. It can make no difference whether the offense which answers to that name in this country is called by the same or another name in Canada.

[2] If the complaint intelligibly describes and identifies the offense, and if the offense so described is punishable by the laws of both countries, and if by any name it is included in the extradition treaty, that is enough. Yordi v. Nolte, 215 U. S. 227, 230, 30 Sup. Ct. 90, 54 L. Ed. 170, and cases cited; Strassheim v. Daily, 221 U. S. 280, 31 Sup. Ct. 558, 55 L. Ed. 735; Greene v. U. S. (C. C. A. 5) 154 Fed. 401, 406, 85 C. C. A. 251.

[3, 4] The complaint is upon information and belief, but it sets forth that it is made by the authority of, and at the request of, the British Columbia officials, and that the information upon which it was based was communicated to the complainant by those officials. It is advisable that certified copies of the foreign complaint and warrant be attached to and made a permanent part of the complaint; but it is sufficient if, as was done in this case, those documents, alleging positively the respondent's guilt, are presented to the commissioner with the complaint, and if depositions showing probable cause are produced at the hearing. Glucksman v. Henkel, 221 U. S. 508, 514, 31 Sup. Ct. 704, 55 L. Ed. 830; Yordi v. Nolte, supra, 215 U. S. 230-232, 30 Sup. Ct. 90, 54 L. Ed. 170.

[5] 2. The chief item of evidence against appellant consisted of his identification by a witness who saw him near the scene of the robbery and immediately afterwards, and of his possession, at the time of his arrest at Detroit, of about $2,700 of Canadian bills identified as among those stolen. It is said that the identifying witness' own description of his opportunity to see Powell makes his later identification wholly incredible, and that the mere possession of stolen property so long a time after the robbery raises no presumption of guilt. We are satisfied that these objections go only to the weight of the evidence, and that these facts, in connection with others which give additional color, amply support the commissioner's finding that Powell ought to be held for trial. Glucksman v. Henkel, supra, 221 U. S. at page 512, 31 Sup. Ct. 704, 55 L. Ed. 830; In re Urzua (C. C.) 188 Fed. 540, 542 (Lacombe, C. J.); McNamara v. Henkel, 226 U. S. 520, 33 Sup. Ct. 146, 57 L. Ed. ——.

3. The evidence which Powell offered tended to show that he was in the United States at the time of the robbery. The commissioner said:

"The defense in this cause is an alibi. It being a defense on the merits, it should be proved on the trial in the state where the crime is charged to have been committed. Evidence, however strong, the practical effect of which is to set up nothing more than a defense of alibi, raises an issue that can only be tried by the court having the exclusive jurisdiction to convict or acquit of crime. Any other rule would tend, in many cases, to defeat the salutary purpose of the constitutional provisions and the law intended to give it operation. This being so, I must certify these proceedings to the Secretary of State."

It is urged that the commissioner here misapplied the rule of Ex parte Charlton (C. C.) 185 Fed. 880 (affirmed by the Supreme Court June 10, 1913), where the affirmative defense offered (insanity) did not tend to disprove that the respondent had committed the crime, and it is said that the commissioner, in effect, rejected all proofs tending to show that Powell was in the United States when the crime was committed, although such proof might make it impossible to believe that Powell was then at New Westminster. If the commissioner's action would bear this construction, a serious question might arise; but it does not. The commissioner also said, orally upon the hearing, and in his return to the writ issued from the District Court, that he did not disregard the testimony tending to show an alibi, but gave it due consideration and did not believe it, and from the whole testimony drew the conclusion that there was probable cause to believe Powell guilty.

From these considerations, it follows that the order of the District Court, discharging the writ of habeas corpus and remanding Powell, must be affirmed.