**Ex parte DAVIS.**

No. 6548.

Circuit Court of Appeals, Ninth Circuit.

Dec. 14, 1931.

Rehearing Denied Jan. 11, 1932.

M. W. Conkling, of San Diego, Cal., for petitioner.

Samuel W. McNabb, U. S. Atty., and Harry Graham Balter, Asst. U. S. Atty., both of Los Angeles, Cal., for respondent.

724

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

WILBUR, Circuit Judge.

The petitioner was arrested on a warrant issued by the United States commissioner charging him with being a fugitive from justice from Mexico. The complaint upon which he was arrested alleged that he had committed the crime of murder in Mexicala, immediately across the boundary line between Mexico and the United States. The hearing was held before the commissioner, and eyewitnesses testified to the circumstances of the killing. It appears from the evidence that on the 3d day of February, 1931, the petitioner stabbed one Pressley and fled across the border into Calexico. Pressley, the victim of the stabbing, was also taken across the boundary line, where he died on March 17, 1931.

■ The commissioner held that there was probable cause to believe that Davis had wantonly murdered Pressley. While we do not go behind his certificate on a writ of habeas corpus to determine the correctness of his conclusions, it may be said that the evidence shows probable cause.

■ In addition to the testimony of eyewitnesses, evidence was introduced before the commissioner to show the institution of proceedings in Mexico charging the petitioner with the killing of Pressley. We will refer to these proceedings more in detail later; it being sufficient at this time to say that under our statute (Rev. St. § 5270 [18 USCA § 651]) it was unnecessary to introduce this evidence. Grin v. Shine, 187 U. S. 181, 23 S. Ct. 98, 47 L. Ed. 130; Desmond v. Eggers (C. C. A.) 18 F.(2d) 503; Fernandez v. Phillips, 268 U. S. 311, 312, 45 S. Ct. 541, 69 L. Ed. 970; Yordi v. Nolte, 215 U. S. 227, 30 S. Ct. 90, 54 L. Ed. 170. It is clear from the foregoing decisions that, where the evidence before the commissioner showed probable cause to believe that the petitioner had committed an extraditable offense within the jurisdiction of Mexico and had fled to this country, it was the duty of the commissioner to direct that the petitioner be held for extradition. The question of the sufficiency of the charge in Mexico was not before the commissioner for his consideration except as it might tend to show whether or not the petitioner had committed an extraditable crime. Subsequent to the order of the commissioner, the Secretary of State, upon requisition therefor by the republic of Mexico through diplomatic channels, issued his writ or warrant of extradition. While in the custody of the respondent for extradition under the writ issued by the Secretary of State, petitioner applied for writ of habeas corpus to the United States District Court for the Southern District of California. The writ was issued, and, after due consideration, the petitioner was remanded to the custody of the marshal. Petitioner thereupon applied to the District Judge for the allowance of an appeal from said order, which was denied, whereupon petitioner filed his petition for a writ of habeas corpus with the Senior Circuit Judge of this court, and the writ was granted. It was claimed at the time the petition was filed that, unless the writ was issued, the petitioner would be immediately transferred to Mexico for trial, and that no other remedy to prevent the execution of the writ was adequate. Upon this petition and these representations the writ was issued and made returnable before this court.

■ Since the submission of this case for decision, the district attorney has filed with the clerk a notice of a motion for an order vacating the order making the writ herein returnable before the Circuit Court of Appeals and asking that the writ be made returnable before the Senior Circuit Judge who ordered its issuance. This application is based on a decision of the Supreme Court, Carper v. Fitzgerald, 121 U. S. 87, 7 S. Ct. 825, 30 L. Ed. 882. We think it is unnecessary to await the hearing of such motion or to consider the propriety of the order making the writ returnable before the Circuit Court of Appeals. The two judges who sat with the Senior Circuit Judge concur with him in this opinion, and it is obviously appropriate that the matter be considered by the court rather than by an individual judge. The point is advanced after argument and submission, and should not delay our decision. We concur, however, with the proposition advanced by the district attorney that the better practice is for this court to consider the validity of the imprisonment of the petitioner upon a direct appeal from the order of the District Court in the habeas corpus proceeding. Where the District Judge declines to allow an appeal, an application for such allowance and for writ of supersedeas should be made to this court, or to a judge thereof, and can be presented as speedily and readily as an original petition for a writ of habeas corpus. We shall require this method of procedure in the future, unless special circumstances are presented which in our opinion justify the issuance of a writ of habeas corpus by us.

Appellant contends that the offense

charged against him in the Mexican court is that of manslaughter and not murder. Perhaps, in view of the fact that the American Ambassador certified upon the proceedings that the offense charged is manslaughter we should accept this construction of the complaint in the Mexican courts as correct. We are satisfied, however, from an examination of the statutes quoted in the proceedings, that the offense "homocidio," charged in the complaint filed in the Mexican court, does not charge a crime of murder in the sense used in the treaty. The word "homocidio" is defined in the Mexican statutes, and the complaint above referred to makes special reference to section 963 of those statutes, which is shown by the translation thereof to include any unlawful killing of a human being and perhaps justifiable homicide as well. The first question then is, Can a fugitive from justice be extradited under the treaty with Mexico where the offense charged in the Mexican court is manslaughter and the extraditable offense is defined in the treaty as "murder." In view of the fact that the word "murder" in the treaty is followed by words which qualify its meaning, we quote the provision thereof as follows: "Article 2. Persons shall be delivered up, according to the provisions of this convention, who shall have been charged with, or convicted of, any of the following crimes or offenses: 1. Murder, comprehending the crimes known as parricide, assassination, poisoning and infanticide." 31 Stat. 1819.

A similar treaty with San Salvador, containing substantially the same phraseology, was construed by Judge Morrow of the United States District Court, afterwards a member of this court, as covering murder in the first and second degree. In re Ezeta, 62 F. 972, 994. In view of the similarity of the treaties we quote therefrom as follows:

"The defendants admit that they shot at and killed Tomas Canas, but they justify their action on the ground of self-defense. It is claimed by them that Tomas Canas had been traitorous to his trust as an officer under Gen. Antonio Ezeta, and that he had surrendered, that very morning, the soldiers, ammunition, and military accouterments under his command; that when he came up to Ezeta he appeared to be somewhat intoxicated; that he exclaimed to Gen. Ezeta, 'General, Manuel Rivas wants your head!' that thereupon he seized Gen. Ezeta by the throat, and also made a movement as if to draw his revolver; that Cienfuegos made an attempt to prevent Canas from drawing his revolver; that Gen. Ezeta immediately drew his re-volver, and fired one shot at Canas, and Cienfuegos followed with three other shots; that Canas half turned his horse, and fell on the roadside, where he was left by Gen. Ezeta and his staff. It is objected that the facts proven do not, in any view, tend to establish the crime of murder, as defined by the treaty and the law of Salvador. In article 3 of the treaty the crime of murder is defined as follows: 'Murder, comprehending the crimes designated in the penal codes of the contracting parties by the terms homicide, parricide, assassination, poisoning, and infanticide.' It is contended that 'homicide, parricide,' etc., must amount to the crime of murder, to come within the treaty,—in other words, that the extraditable offense is limited to the crime known in our law as 'the killing of a human being, with malice aforethought,'—or, if we look to the law of Salvador, we must still find the facts sufficient to bring the case within the offense amounting to murder under the law of that republic. The Penal Code of Salvador provides as follows:

"'Article 360. Murder is homicide committed with premeditation, and under any one of the following circumstances: First, with perfidy or breach of trust; second, for a price, or promise of reward; third, by means of flood, fire, or poison. The crime of murder will be punishable with the penalty of death.

"'Article 361. Homicide. He who kills another with premeditation, and without any of the circumstances enumerated in the preceding article, or under some one of said circumstances, and without premeditation, will be punished with the penalty of imprisonment at hard labor. In any other case, the penalty of imprisonment at hard labor shall be imposed on the offender.'

"It is contended that the facts here proven do not show the circumstances constituting murder, within the meaning of the law of Salvador, and therefore the accused cannot be extradited for that offense, and that, if the facts be held to bring the case within section 361 of the Penal Code of Salvador, still the accused cannot be extradited, for that is not the crime known as murder. It seems to me that this is a refinement not justified by the terms of the treaty. I cannot understand why, if the treaty was only intended to comprehend murder as known to our law, or what corresponds to that crime elsewhere, there should have been a further enumeration of offenses amounting to the same degree. In my opinion the article of the treaty in question should be read according to its plain and

obvious meaning in the designation under the general title of 'Murder,' as the crime of homicide is defined in article 361 of the Penal Code of Salvador."

It should be noted that the treaty with Mexico does not contain the phrase, "The crime designated in the penal codes of the contracting party by the terms homicide," etc. Blackstone indicates the difference between murder and manslaughter as follows:

Cooley's Blackstone, 4th Ed. vol. II, Book IV, *p. 191, p. 1358: "Manslaughter, when voluntary, arises from sudden heat of passion, murder from wickedness of the heart."

Manslaughter is thereinafter defined as: "The unlawful killing of another without malice express or implied which may be either voluntarily upon a sudden heat, or involuntarily, but in the commission of some unlawful act."

Murder involves the charge of homicide committed "with malice aforethought, either express or implied," Id. Book IV, c. 14, p. 195, p. 1361.

The question of whether or not the term "murder" used in an extradition treaty covered the crime of manslaughter was considered by Judge Cadwalader of the District Court for the Eastern District of Pennsylvania in 1873 in Re Palmer, 18 Fed. Cas. 1016, No. 10679. It was contended in that case that the crime shown by the testimony to have been committed by the fugitive was manslaughter. The evidence quoted in the report of the case seems to indicate that the crime was of no higher degree than manslaughter. Judge Cadwalader said: "Whether it was an excusable homicide, and if not, what was the grade of guilt, are questions for the decision of a British tribunal. This does not preclude the observation that if a crime has been committed, it was of the lowest grade of inexcusable homicide. The offence in question was, nevertheless, if punishable at all, within the generic description of murder, as the word is used in the treaty of 1842."

It appears from a note to the case, however, that the Secretary of State finally refused to issue a warrant for extradition. In 1874, Judge Lowell of the United States District Court for the District of Massachusetts, in considering the same treaty in Re Kelley, 14 Fed. Cas. 234, No. 7,655, said:

"Upon the evidence I find that the crime committed was manslaughter; and this is not within the treaty, which mentions only murder, assault with intent to commit murder, piracy, arson, robbery and forgery."

"It was suggested that murder might include manslaughter. But considering that both the law and the language of the two countries are alike, and that the treaty describes well-known crimes by their technical names, this construction is inadmissible. As well might we hold that robbery includes theft; or piracy, mutiny. In an extradition treaty the greater crime does not include the lesser, because the intent is to deliver up great criminals only."

We need not pursue the subject further, as it seems to be conceded by the district attorney in his reply brief that manslaughter is not an extraditable offense under the treaty with Mexico. He says:

"We have no quarrel with the petitioner when he states that manslaughter is not an extraditable offense, but there is nothing in the record to indicate that manslaughter, as we understand it in the Anglo-American legal system, or in the Mexican system of law is the offense charged either before the Committing Magistrate in Mexico, or before the Extradition Commissioner in the United States.

"All of the documents indicate that the offense charged was that of murder without specifying the degree."

Conceding, as he does, that the extradition treaty does not cover the crime of manslaughter, he contends that the offense charged against the petitioner in the Mexican court is that of murder, and cites in support of that contention In re Urzua (C. C.) 188 F. 540, 542, wherein Circuit Judge Lacombe states: "There is no force in the contention that the requisition charges petitioner, not with murder, but with homicide. Reference to the treaty, whose clauses are printed in parallel columns in English and Spanish, shows that the word 'homocidio' was considered by the two governments as the equivalent of 'murder,' including among other crimes 'asesinato,' or 'assassination.' The proofs show that it is that variety of 'homicidio' which is known as 'asesinato' with which petitioner is charged."

At the time this decision was rendered, the extradition treaty with Mexico of 1899 was in force, and that treaty provides for the extradition of a person committing "murder, comprehending the crimes known as parricide, assassination, poisoning and infanticide." Malloy on Treaties, Conventions, vol. I, p. 1184, 31 Stat. 1818, 1819, art. 2. Just what effect should be given to this decision if followed in the case at bar is not altogether clear. It appears from the decision of Judge Lacombe that "the proofs show that it

is that variety of 'homicidio' which is known as 'asesinato' with which petitioner is charged." It should be observed, however, that the question under consideration in that matter was as to whether or not the commissioner was justified "in holding petitioner for extradition to Mexico on the charge of murder." In our view the decision of Judge Lacombe was correct where, as he states, the proceedings in the Mexican court introduced before the commissioner showed that the petitioner was guilty of assassination. The question here under consideration is not involved in that case, namely, whether or not a man who is charged in the Mexican courts with manslaughter can be extradited upon a warrant issued by the Secretary of State for the crime of murder.

█ The offense charged in the Mexican courts was manslaughter. Assuming, then, that the extradition treaty with Mexico provides for the extradition of persons committing murder and does not provide for the extradition of persons committing manslaughter, was the Secretary of State authorized to order the petitioner delivered to the Mexican government for trial upon the charge of murder? While it is uniformly held that a government may surrender a fugitive from justice for trial notwithstanding the absence of an extradition treaty, the powers of the Secretary of State are defined by statute (18 US CA. § 653; Moore on Extradition, § 43). He is authorized to order the person committed to be delivered in the name and behalf of such foreign government "to be tried for the crime of which such person shall be accused." It is further provided: "And such person shall be delivered up accordingly; and it shall be lawful for the person so authorized to hold such person in custody, and to take him to the territory * * * of such foreign government, pursuant to such treaty." The statute limits the authority of the Secretary of State to the delivery of persons who shall be accused and limits the authority of the person executing the order "to take him to the territory of such foreign government, pursuant to such treaty." It appears, therefore, that, while the action of the commissioner may be taken in advance of any charge filed in the Mexican courts, the right to deliver him for trial depends upon the filing of an accusation in the foreign jurisdiction, and that accusation must be an offense defined in the treaty. See, upon this point, Powell v. United States (C. C. A.) 206 F. 400; United States v. Greene (C. C. A.) 146 F. 766; In re Grin (C. C.) 112 F. 790; Id., 187 U. S. 181, 23 S. Ct. 98, 47

L. Ed. 130; In re Sheazle, 21 Fed. Cas. 1214, No. 12734; State v. Rowe, 104 Iowa, 323, 73 N. W. 833.

█ At this point, in view of our conclusion as to the final disposition of this matter, we will consider one of the main contentions of the petitioner that, inasmuch as the stabbing occurred in Mexico and the death of the victim occurred in California, the petitioner should be tried in California and not in Mexico, for the reason that the phrase "within the jurisdiction" contained in the treaty for extradition means "exclusive jurisdiction," and California has concurrent, if not exclusive, jurisdiction of the offense under section 778 of the Penal Code of California. In support of this contention, appellant cites an English case in which the court declined to surrender for extradition a person who could be tried as well within its jurisdiction. In re Tivnan, 122 Eng. Rep. Reprint, 971. The theory of the petitioner is that the crime of murder or manslaughter is not complete until the death of the wounded person, and that therefore, as the death occurred in California, the offense of murder was completed in California and not in Mexico, and should be tried there. We do not agree with this conclusion. So far as the petitioner is concerned, his offense was completed at the time the fatal blow was struck. He did nothing thereafter to cause the death of the victim. We think that the crime of murder so committed comes within the extradition treaty which provides for the extradition of persons committing the crime of murder "within the jurisdiction of the Republic of Mexico," and that he should therefore be surrendered for trial notwithstanding the possibility that he might also be tried for murder under the laws of the state of California. The treaty in that regard provides as follows: Article 1, Treaty 1899, p. 1184, vol. I, Malloy, Treaties: "The Government of the United States of America and the Government of the United States of Mexico mutually agree to deliver up persons who, having been charged with or convicted of any of the crimes and offenses specified in the following article, committed within the jurisdiction of one of the contracting parties, shall seek an asylum or be found within the territory of the other." 31 Stat. 1818.

We are also inclined to the opinion that the statute of California, referred to by petitioner (Penal Code, § 778) as justifying his trial in California, is not applicable to this offense and would not justify such trial. We do not, however, pass upon that question, believing it to be immaterial.

It follows from what we have said that the commissioner was correct in issuing his warrant for the detention of the petitioner by the United States marshal pending the application of the Mexican government for his extradition for the offense named in the complaint before the commissioner and the warrant issued by the commissioner, namely, murder; that the Secretary of State was not warranted in ordering the extradition of the petitioner until such time as he had been charged in the courts of Mexico with the crime of murder.

The prisoner will be remanded to the custody of the United States marshal to be placed in jail in accordance with the warrant issued by the commissioner under the provisions of 18 USCA § 651, to be detained as provided in 18 USCA § 654, to await a proper extradition warrant, said detention for that purpose not to exceed two calendar months hereafter, as it appears that the transportation of the petitioner has been delayed until this time by his application for writ of habeas corpus; provided, however, that, if the petitioner desires to return to Mexico for trial upon the complaint now pending charging manslaughter upon the warrant of the Secretary of State now issued, he should be so conveyed by the marshal in accordance with the terms of the warrant heretofore issued by the Secretary of State.