**In re the Extradition Of: Francisco DE JESUS ALATORRE PLIEGO Respondent.**

**No. 03–3300M (VAM).**

United States District Court, D. Arizona.

May 18, 2004.

See, also, 2004 WL 1274498.

Donna Lee Elm, Federal Public Defender's Office, Thomas N. Crowe, Crowe & Scott PA, Phoenix, AZ, for Respondent.

### ORDER

MATHIS, United States Magistrate Judge.

*PROCEDURAL BACKGROUND*

On December 18, 2003, the United States filed its Complaint for Provisional Arrest pursuant to 18 U.S.C. § 3184 asking for the arrest of Francisco de Jesus

Alatorre Pliego in furtherance of an extradition. (Doc. 1). The arrest warrant issued and the defendant was arrested on December 30, 2003. (Doc. 2). Counsel was appointed to represent Mr. Alatorre. (Docs.2, 3, 4). On January 5, 2004, retained counsel made his appearance. (Doc. 7). Respondent Alatorre asked for a continuance of the detention hearing, which was granted, and the hearing was held on January 6, 2004. (Docs.8, 9, 10). The Government filed its Memorandum in Opposition to Bail. (Doc. 11). Alatorre filed his Supplemental Memorandum. (Doc. 12). On January 7, 2004, the Court set conditions of release for Mr. Alatorre. (Docs.13, 14, 15, 16). Respondent Alatorre remains out on conditions of release.

On March 4, 2004, the United States filed its Notice of Filing Formal Extradition Documents. (Doc. 25). The formal extradition documents consist of two packages of documents, each of which is certified and bound by ribbon. In one package, an official of the United States Government certifies that an extradition treaty exists between the United States and Mexico, the offense for which extradition is sought is covered by the treaty and the attached documents submitted by the Government of Mexico were certified by the Principal Consular Officer of the United States in Mexico. The second package consists of a certification by the Minister Counselor for Consular Affairs of the United States in Mexico. The certification indicates that the supporting documentation (attached documentation) is submitted in furtherance of an extradition from the United States of Francisco de Jesus Alatorre Bliego who is charged with the crime of fraud in Mexico. The certification further states that the documents "...are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of the United Mexican States..." *See* 18 U.S.C. § 3190. This package of documents contains a list of evidence (Attachments 1–17) in Spanish and English. These two packages are the only certified documents submitted in support of the extradition.

Respondent Alatorre filed a Motion to be provided with legible copies of documents. (Doc. 30). Respondent pointed out that several of the documents in the certified package filed with the Court and the copy delivered to respondent were not legible. The United States responded and filed a Notice of Delivery of a better copy of Exhibit 14. (Docs.30–32). A hearing was conducted on respondent's Motion (Doc. 36), the extradition hearing was continued and the Government was directed to provide legible copies of documents to respondent. The Government committed to defense counsel and the Court that the Government would be relying on only Exhibits 2, 14, 16 and 17 at the extradition hearing. (Doc. 36 and Doc. 56 at pp. 3–6). The Government then filed a Notice and produced to respondent clear copies of Exhibits 2 and 14. (Doc. 39). The Government next filed a Notice of Delivery of Better Copies and Additional Exhibits. (Doc. 44). Exhibit 44 contained a better copy of Attachment 2 in Spanish, Attachment 14 in Spanish, the Deed referenced in Exhibit 14 in Spanish, Exhibit 19 (some pages allegedly from the passport of respondent with an unidentifiable photograph), Exhibits 20 and 21 (copies of checks written to Joe Carbajal). Exhibits 19–21 were not part of the certification package.

## THE STANDARD TO BE APPLIED

18 U.S.C. § 3184 provides for extradition from the United States. It states that the person sought "...may be brought before the justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered...If, on such hearing, he deems the

evidence sufficient to sustain the charge...he shall certify the same..." Over the years the case law has developed the principle that an extradition hearing is like a probable cause hearing. *Ex parte Davis,* 54 F.2d 723 (9th Cir.1931) (previous extradition statute); *Magisano v. Locke,* 545 F.2d 1228 (9th Cir.1976); *Greci v. Birknes,* 527 F.2d 956 (1st Cir.1976); *Jimenez v. Aristeguieta,* 311 F.2d 547 (5th Cir.1962) *cert. denied,* 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1963), *rehearing denied,* 374 U.S. 858, 83 S.Ct. 1867, 10 L.Ed.2d 1083 (1963).

## THE EXTRADITION HEARING

On May 4, 2004, the extradition hearing was held. (Doc. 51). On that date, respondent filed a Memorandum regarding the general law of admissibility of evidence in an extradition hearing and an objection to the Government submitting any additional exhibits in support of extradition other than Exhibits 2, 14, 16 and 17. (Docs.48, 49). The motion is well taken and supported by the transcript of the March 30, 2004 hearing. (Doc. 56 at p. 6).

At the extradition hearing, the Government offered Exhibits 2, 14, 16–23. The Court admitted Exhibits 2, 14, 16 and 17 as the Government previously indicated its reliance on those exhibits. The Court reserved ruling on Exhibits 18–23 until it could determine whether the Government bound itself to rely on only Exhibits 2, 14, 16 and 17. Respondent Alatorre offered Exhibits 51–56 which were admitted.

At the extradition hearing, the Government called John Dyck, an employee of the former Immigration and Naturalization Service (now ICE). The Government offered a proffer that Mr. Dyck would testify that he reviewed the A-file for respondent and that Exhibits 22 and 23 came from respondent's A-file. Exhibit 22 is a Memorandum of Creation of Record of Lawful Permanent Residence and Exhibit 23 consists of two pages from respondent's passport. Respondent indicated he had no objection to that proffer and it was received. Mr. Dyck did not testify. The Government then called Joe Carbajal who testified he was a friend of respondent Alatorre's and that he received checks from Mr. Alatorre in 1999 and 2000. He then testified that he compared the signatures on the checks he received to the signature on Attachment 2 of the certified documents (a contract) and he believes the signatures look the same. Respondent objected to this testimony and the Court found it to be improper lay testimony regarding signature identification. According to Mr. Carbajal, Exhibits 20 and 21 are checks he received from respondent.

At the extradition hearing, over objection of the United States, respondent Alatorre called Sandra Ramsey who testified that she is a forensic document examiner with many years experience in law enforcement (state and federal), she is certified by the American Board of Document Examiners, she is published and belongs to numerous professional organizations and she has qualified as an expert witness in both state and federal court. She testified she took known signatures of respondent Alatorre and requested specimens from Mr. Alatorre, and compared these known signatures to the signature on Attachment 2 (the contract sent from Mexico which is the basis for the alleged fraud). It is her opinion that the signature on Attachment 2 is not a genuine signature but rather a simulation of the natural signature of the person who wrote the known signatures. She testified the signature on Attachment 2 is substantially different from the knowns and the requested specimens.

Respondent called Mariela Yrene Vivas Ponce who testified she is a lawyer in Mexico, she brought a certified copy of the criminal file in Mexico to Court, Attachment 17 to the certified documents (photo-

graphs of the person sought in the extradition) is not in the Mexican Government's criminal file, the criminal file in Mexico contains the first complaint from the victim and at the time it was submitted the victim identified the person who defrauded him as Francisco "N." She testified that in Mexico the "N" means the last name was unknown to the victim. The contract which forms the basis for the fraud is dated January 12, 2001 and contains the name of the person who signed the contract as Francisco de Jesus Alatorre Alatorre. In short, on the date the contract was allegedly signed, the victim knew the person's name. However, the first complaint brought by the victim which appears in the certified Mexican file is dated September 1, 2002 and refers to the perpetrator of the fraud as Francisco "N."

Respondent Alatorre then testified he is in a PhD program at Arizona State University, employed by Arizona State University, he did not sign the document (Attachment 2) which is the contract from the Mexican file, he provided known signatures for handwriting analysis (Exhibit 52), Exhibit 55 was his itinerary for a flight he took on January 12, 2001 to McAllen, Texas (the date the victim says the fraudulent contract was signed and the date on the contract) where he spent the day, he checked into a La Quinta Inn in McAllen, Texas on January 12, 2001 for one night (Exhibit 56 is the hotel receipt). Respondent Alatorre denied any connection to the contract or fraud that occurred in Mexico. On cross-examination, the Government established that respondent Alatorre was not truthful with the Maricopa County Court in his dissolution case when he filed an Affidavit stating his income. More specifically, the Government established he was not truthful about his income in that he did not disclose on the affidavit a significant source of income. Exhibits 24 and 25 were admitted for impeachment during the cross-examination.

At the close of the extradition hearing, respondent Alatorre argued the Government failed to show he is the person who allegedly committed fraud in Mexico. Respondent Alatorre has always taken the position that he was set up and did not commit the fraud in Mexico. He did not deny that the Government established probable cause to believe that a fraud was committed by someone using the name Francisco de Jesus Alatorre Alatorre. Rather, his position is that the Government failed to show that he is the person identified by the witnesses. Upon questioning by the Court, the Government agreed that the Mexican Government failed to send a photograph of the person identified by the witnesses as the perpetrator. The Government informed the Court that respondent's father has exactly the same name. Throughout the extradition documents, the witnesses are shown a passport photo and they identify the person in the passport photo as the perpetrator of the fraud. The passport photo is nowhere to be found. The Mexican Government sent Attachment 17 in the certified documents which is not the passport photo used with the witnesses to identify the wrongdoer.

In short, the Mexican Government sent pictures of the person they seek to extradite but did not send the picture of the person identified by the witnesses. As a result, the certified documents do not establish probable cause to believe that respondent committed the crime. The United States Government attempted to fill this gap with exhibits and testimony from here in the United States. However, they were unsuccessful.

Even if the Court considers every item in the certified documents, all of the Government's new uncertified evidence and none of respondent's evidence, there is no probable cause to believe that the Francis-

co de Jesus Alatorre Pliego who was arrested and sitting in the courtroom at the extradition hearing is the person that was identified by the witnesses as committing the fraud. As a result, this Court cannot issue a certification and order for extradition.

**IT IS THEREFORE ORDERED** that the Court finds there is no probable cause to support the extradition filed in this case and the Court will not issue a certification and order for extradition.

**IT IS FURTHER ORDERED** that the Clerk of the Court docket and file the two volumes of certified documents.